UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SECURITIES AND EXCHANGE, COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 14-14692-LTS |
| HOWARD B. PRESENT, | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON F-SQUARED'S EMERGENCY MOTION TO QUASH SUBPOENAS AND FOR A PROTECTIVE ORDER PROHIBITING DISCOVERY OR DISCLOSURE OF ITS PRIVILEGED DOCUMENTS AND COMMUNICATIONS (DOC. NO. 30)

December 21, 2015

SOROKIN, J.

Presently before the Court is F-Squared's Emergency Motion to Quash Subpoenas and for a Protective Order Prohibiting Discovery or Disclosure of its Privileged Documents and Communications. Doc. No. 30. For the foregoing reasons, the Court ALLOWS the motion.

I. Background

In 2006, Defendant Howard B. Present ("Present") co-founded, and became CEO of, F-Squared Investments, Inc. ("F-Squared"), a startup investment management firm. Doc. No. 1 ¶ 16. Until he resigned as CEO in 2014, Present was both F-Squared's CEO and the public-facing executive responsible for statements regarding its products. Id. ¶ 46. Throughout this period, Present, in his capacity as CEO of F-Squared, consulted regularly with outside counsel. Doc. No. 36 at 4.

In 2013, the Securities and Exchange Commission ("SEC") commenced an investigation into both F-Squared and Present. Id. at 5. In August 2014, during the course of this investigation, F-Squared, with Present as CEO, refused the SEC's request to waive its attorney-client privilege, Doc. No. 35-4. In November 2014, Present left F-Squared, Doc. No. 32-4 at 2, and thereafter F-Squared admitted liability for making materially false statements, see Doc. No. 35-2, and paid a $35 million fine. Doc. No. 35-2 at 13-14. F-Squared has now filed for bankruptcy protection, where it faces a variety of creditor claims, including a potential class action lawsuit.

On the day the SEC settled with F-Squared, the SEC sued Present for various violations of the Advisers Act, 15 U.S.C. § 80b, and associated SEC regulations. Doc. No. 1; see Doc. No. 35-2 at 1 (dating F-Squared's settlement with the SEC). The SEC seeks injunctive relief, disgorgement, and a fine. Doc. No. 1 at 47-48. In addition, the SEC represents that, though it does not seek such an order from this Court, prevailing in this case will bar Present from the securities industries, his life's work. Among other affirmative defenses, Present asserted in his Answer that he "reasonably relied upon the work, advice, professional judgment, and opinion of others, including but not limited to legal and compliance professionals." Doc. No. 14 at 27. In the motion papers, Present has seemingly refined this defense, at least for purposes of the pending motion, contending only that the privileged information he seeks bears on the state of his mind that the SEC must prove. Doc. No. 36 at 7.

In the course of discovery, Present served on F-Squared a Rule 45 subpoena seeking attorney-client communications regarding "[a]ll documents concerning or including legal advice regarding: a. Public-facing statements F-Squared would make regarding its products from 2008 to 2013; b. Contractual matters between F-Squared and Newfound Research LLC from 2008 to

2013." Doc. No. 32-2 at 9.  The SEC has both served a virtually identical subpoena on F-Squared, and noticed three depositions which would potentially cover that information.  See Doc. Nos. 32-1, 32-17, 32-18, 32-19.  In response, F-Squared has filed a motion to both quash the subpoenas and receive a protective order, Doc. No. 30, and a privilege log.  Doc. No. 37-1.  After the motion hearing, F-Squared submitted five privileged documents selected by Present for ex parte in camera review.  These several documents suggest Present consulted with counsel regarding his activities for F-Squared, confirming what the parties do not dispute—the subpoenaed documents are relevant to the claims before the Court.

II.   Discussion

Federal Rule of Civil Procedure 26(b) allows, within limits not relevant here, parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Several conclusions are beyond dispute. First, the subpoenaed information is clearly both relevant to Present's asserted defense and covered under the attorney-client privilege.  Present concedes that F-Squared—and not he—holds the privilege.  Doc. No. 36 at 8.[1]  Present also recognizes "that he is not in a position to waive that privilege."  Id.[2]  Neither Present, the SEC, nor F-Squared dispute the foregoing. Accordingly, Present cannot discover the subpoenaed information unless it falls under an exception to the privilege.

Instead of relying on an established exception to the privilege (none of which appear applicable in any event), Present asserts that fairness compels disclosure of the privileged

---

[1] Present makes no claim that a jointly held privilege is at issue here.  Doc. No. 36 at 8.
[2] Even outside his recognition, Present's position is correct as a matter of agency law. Restatement (Third) of Agency § 8.05(2) cmt. c (Am. Law Inst. 2006).  And, if he did nevertheless reveal such communications, the disclosure would not constitute a waiver of the privilege.  See United States v. Chen, 99 F.3d 1495, 1502 (9th Cir. 1996) ("[S]ince a corporate employee cannot waive the privilege, that same individual as an ex-employee cannot do so.").

information. Id. at 10. In particular he compares the "substantial[] prejudice" he faces if "preclud[ed] . . . from offering evidence of interactions by himself and others with counsel" to F-Squared's "practically if not entirely nil" need to maintain the privilege. Id. at 11.[3] Because Present may not discover the subpoenaed communications unless they are nonprivileged, he essentially asks the Court to balance his interest against F-Squared's, and find the communications outside the privilege. This the Court cannot do.

In Swidler & Berlin v. United States, 524 U.S. 399, 407-09 (1998), the Supreme Court, in holding that an individual's attorney-client privilege survived his death, rejected the proposition that a criminal prosecutor could breach the privilege to gather evidence for use in a later public criminal trial, notwithstanding the important public interest of obtaining evidence in an ongoing criminal investigation.[4] While Swidler &Berlin arguably does not squarely control this case—the prosecutor in Swidler & Berlin was not originally privy to the sought-after communications, it is a seminal applicable decision from the Supreme Court regarding the privilege. Moreover, two courts facing circumstances identical to Present's—a former employee seeking, over the objections of the privilege-holding employer, legal communications he was privy to in his corporate capacity—have barred disclosure of the communications in light of Swidler & Berlin. United States v. Wells Fargo Bank N.A., No. 12-CV-7527 (JMF), 2015 WL 5582120 (S.D.N.Y

---

[3] F-Squared has explained that it prefers the privileged information remain so in light of various litigation it faces for the foreseeable future. Doc. No. 42 at 5. Present has not argued that F-Squared has asserted the privilege in bad faith or for an illegal reason, and, though it has not done so, no legal rule cited to the Court compels F-Squared to advance a permissible reason for invocation.

[4] The Court did leave open the possibility that "circumstances implicating a criminal defendant's constitutional rights might warrant breaching the privilege." Swidler & Berlin, 524 U.S. at 408 n.3. As Present faces civil charges, this potential exception does not apply here.

Sept. 22, 2015) (corporate employee); see Ross v. City of Memphis, 423 F.3d 596 (6th Cir. 2005) (municipal employee). [5]

Several factors have caused the Court to give the pending motion substantial and extended consideration: the thoughtful opinions noted above addressing closely analogous situations; the candid excellent arguments of all counsel; and the fairness considerations Present advanced. Relatedly, the Court observes a tension arising from legal rules that encourage corporate officials to seek legal advice about their actions on behalf of the corporation, and protect those communications from disclosure, but, as here, prevent the corporate official from defending himself personally based (possibly) on the very advice he received when the corporation and the official differ on whether to waive the privilege.

No doubt Present seeks disclosure of communications to which he was privy for the sole purpose of defending the legality of conduct which the government has challenged as a violation of various non-criminal statutes. This presents a different situation than Swidler & Berlin, which involved a governmental entity not a party to the communications seeking to breach the privilege. Nonetheless, at least in the particular circumstances of this case, Swidler & Berlin and

---

[5] Present cites an array of cases to support his position. However, the vast majority of these authorities pre-date Swidler & Berlin's rejection of balancing. See Garner v. Wolfinbarger, 430 F.2d 1093, 1103-04 (5th Cir. 1970); Resolution Trust Corp. v. Adams, No. 93-389, 1994 WL 315646, at *1 (M.D. Fl. Apr. 14, 1994); Gottlieb v. Wiles, 143 F.R.D. 241, 247 (D. Colo. 1992); Moskowitz v. Lopp, 128 F.R.D. 624, 638 (E.D. Pa. 1989); In re Hutchins, 211 B.R. 330, 333 (Bankr. E.D. Ark. 1997); In Re Braniff Insolvency Litig., 153 B.R. 941, 945 (Bankr. M.D. Fla. 1993).

Nor do the three post-Swidler & Berlin cases Present cites contain much persuasive value. One, Securities and Exchange Comm'n v. TenFold Corp., No. 2:03-CV-00442 TC, 2005 WL 7874298 (D. Utah Aug. 19, 2005), involved an agreement between the parties for the Court to provide a protective order in return for the employer providing the communications. And the other two do not discuss Swidler & Berlin's rejection of a balancing analysis. See United States v. W.R. Grace, 439 F. Supp. 2d. 1125 (D. Mont. 2006); Carnegie Hill Fin., Inc. v. Krieger, 99-CV-2592, 2000 WL 10446 (E.D. Pa. Jan. 5, 2000).

the two persuasive opinions applying it to situations closely similarly to this case govern. Here Present does not face the situation in which he cannot access the privileged information merely because he failed to anticipate the possibility of a future investigation or need and, therefore, at the commencement of his employment failed to bargain with the corporation for the right to future access to the information. Rather, the SEC investigation commenced <u>while</u> Present served as CEO of F-Squared. That investigation encompassed the misrepresentations now alleged by the SEC and placed Present on notice of his potential personal exposure. Both as the CEO and a sophisticated businessman, he necessarily understood that F-Squared, rather than he, personally held the keys to attorney-client privilege. At that time, as the CEO of F-Squared, Present was in the position either to waive the privilege or to obtain in his personal capacity the right to be able to waive the privilege in the future. He chose not to do so. These circumstances mitigate the fairness considerations advanced by Present. Finally, ordering disclosure, even under a protective order, necessarily divests F-Squared from control over its privileged information and exposes it to the SEC and, ultimately, at trial to a variety of others contrary to the fundamental purposes of the privilege.

In light of the undisputed application of the unwaived privilege, the Supreme Court's rejection of balancing considerations—which other courts have applied even when individuals seek access to information disclosed previously to them, the consequences of permitting the subpoenas to proceed, and the particular circumstances of this case, the Court ALLOWS the motion and quashes the subpoenas.

III.   Conclusion

Accordingly, the Motion to Quash (#30) is ALLOWED. The clerk shall seal as an <u>ex parte</u> exhibit the five privileged documents reviewed by the Court and maintain them with the record of this case.

                                              SO ORDERED.

                                             /s/ Leo T. Sorokin
                                            Leo T. Sorokin
                                            United States District Judge