UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>           Plaintiff,<br><br>v.<br><br>HOWARD B. PRESENT,<br>           Defendant. | CIVIL ACTION NO.<br>14-14692-LTS |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS
TO DAVID JAY MORTON AND MORTON WEALTH ADVISORS**

Defendant Howard B. Present ("Present") moves pursuant to Fed. R. Civ. 45 to compel non-parties David Jay Morton and Morton Wealth Advisors d/b/a Morton Financial ("Morton Wealth") (collectively, "Morton Parties") to comply with subpoenas dated December 14, 2015, that requested the production of documents discoverable in this matter and relevant to his defense.

**BACKGROUND**

Howard Present served as the Chief Executive Officer of F-Squared Investment Management, LLC ("F-Squared"), a financial services company headquartered in Wellesley, Massachusetts, from 2006 to 2014. In early 2008, Mr. Present began to have discussions with David Jay Morton ("Morton"), principal of Morton Wealth, a broker-dealer and private wealth advisor also based in Wellesley. These discussions initially revolved around Mr. Present's efforts to sell F-Squared's AlphaCycle index product to Morton Wealth for use with Morton Wealth clients.

The discussions then came to include Morton Wealth's ETF sector rotation investment strategy, which Morton represented Morton Wealth used to manage client assets.[1] Morton Wealth's sector rotation strategy used quantitative, momentum-based buy/sell signals to rotate in or out of 9 ETFs related to different economic sectors. Crucially, and contrary to conventional investment practice at the time, the Morton Wealth strategy used cash as a residual—the strategy would "go to cash" when the quantitative signals indicated not to hold ETFs, to protect investors from market downturns.

As a result of these discussions, Morton participated in creating a new entity, Newfound Research ("Newfound"), to license the ETF sector rotation strategy to F-Squared. The license included rights to an improved algorithm, programmed by Corey Hoffstein (who became a principal of Newfound), for generating the quantitative buy/sell signals used in the strategy. The strategy was translated into what became F-Squared's AlphaSector Rotation Index, which was launched in October 2008.[2]

Morton told Mr. Present that he had been managing money using the strategy since 2001, and Morton Wealth provided F-Squared with buy/sell signals for that historical timeframe, which F-Squared incorporated into the AlphaSector index. Mr. Present also learned from Morton that approximately $100 million of client assets at Morton Wealth was tied to the use of the strategy, and that Morton Wealth managed nearly $4 billion in assets. F-Squared included this information in its AlphaSector marketing materials.

---

[1] An ETF or "exchange traded fund" is a fund that, unlike a mutual fund, can be traded on an exchange (comparable to an individual stock).

[2] An index is not itself an investable product, but rather a hypothetical benchmark that investment vehicles like mutual funds or separately managed accounts can "track" to achieve similar performance.

Following F-Squared's AlphaSector success, in 2009 and 2010 Morton began to participate in developing and marketing competing financial products that used the go-to-cash sector rotation strategy and buy/sell signals that Newfound licensed to F-Squared. These products included the Wellesley Portfolio, the Edgartown Portfolio, and the Copeland Risk Managed Dividend Growth Fund (offered by Copeland Capital Management, LLC ("Copeland")). Marketing materials for these other products contain statements that the go-to-cash sector rotation strategy had been utilized as early as 2004.

In July 2013, the SEC began examining F-Squared, including its marketing materials, which indicated (1) a "wealth firm" had been managing client assets according to the strategy behind the AlphaSector index since 2001; (2) as of fall 2008, approximately $100 million in client assets were being so managed; and (3) the wealth firm, as of fall 2008, had nearly $4 billion in assets under management. During the SEC examination that followed, Morton, contrary to what he had told Mr. Present, denied that any such sector rotation strategy had existed at his firm and denied making any such representations to Present.

The SEC issued administrative subpoenas to the Morton Parties seeking certain information related to F-Squared and AlphaSector. *See* Decl. of Justin P. O' Brien, filed herewith, Ex. A.[3] The Morton Parties eventually produced approximately 9,900 documents, comprising over 40,000 pages, in response to the SEC subpoenas. On December 22, 2014, the SEC brought this action against Mr. Present, alleging violations of the Investment Advisers Act for falsely representing the pre-2008 history of AlphaSector.

On or about June 25, 2015, Mr. Present served subpoenas on the Morton Parties ("First Present Subpoenas"). The First Present Subpoenas contained thirty-six (36) requests directed

---

[3] References to "Ex." reflect exhibits to this declaration.

towards categories of documents that would be discoverable in this case but may not have been responsive to the SEC subpoenas. Following negotiations between counsel for Mr. Present and the Morton Parties, Mr. Present agreed not to pursue four of the requests, and entered into a confidentiality agreement applicable to any documents the Morton Parties produce in this case. The Morton Parties then indicated that they did not have any documents responsive to twenty-nine (29) of the remaining thirty-two (32) requests, other than documents that had already been produced to the SEC.[4]

On December 14, 2015, Present served on the Morton Parties the subpoenas at issue ("Second Present Subpoenas"). *See* Ex. B. These subpoenas each contain nine (9) document requests that, again, are aimed at documents discoverable in this matter that were not responsive to the SEC's (or Mr. Present's) prior requests. On or about January 8, 2016, the Morton Parties issued Responses and Objections ("Responses") to the Second Present Subpoenas, indicating that they would not produce a single document. *See* Ex. C. Unlike in response to the First Present Subpoenas, the Morton Parties object to only one of the nine requests based on the contention that any responsive documents were previously produced to the SEC. *See* Response No. 9.[5]

**ARGUMENT**

"It is well-established that '[t]he non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34.'" *Rockstar Consortium US LP*, 2015 WL 5972422, at *4 (D. Mass. Oct. 14,

---

[4] Because the SEC produced to Mr. Present the documents it had received in response to its investigative subpoenas, Mr. Present indicated that the Morton Parties should not re-produce such documents.

[5] To the extent the Morton Parties assert that they have no documents responsive to Request No. 9 that have not already been produced to the SEC, Mr. Present does not pursue any further response to that request.

2015) (quoting Fed. R. Civ. P. 45 Advisory Committee's Notes).  Rule 45 subpoenas are also governed by the same principles that apply to all discovery under Rule 26(b)(1). *Shea v. Mcgovern*, 2011 WL 322652, at *3 (D. Mass. Jan. 31, 2011).  Rule 26 was amended effective December 1, 2015:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). As the Advisory Committee's Note to the Amendment summarizes, "[i]nformation is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case." *See* Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment. The change is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." *Id*.

The Morton Parties make just such boilerplate objections to the Present Second Subpoenas' requests, claiming that information sought is "not relevant or proportional to the needs of the underlying action," or some variation thereof.  The Morton Parties take the position that the subpoenas seek information "wholly irrelevant to the underlying SEC action against Mr. Present regarding false and misleading statements made by Mr. Present."  *See* Responses 2 – 8.

To be sure, a party issuing a Rule 45 subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  However, the nine requests in the Second Present Subpoenas impose no burden or expense that could be characterized as undue.  Each request is limited, appropriate, and proportional to this case:

**Request No. 1:  All Documents filed publicly by Morton Wealth through 2012 with a state or federal regulator.**

**Request No. 2:  Every Form ADV Part 2, and associated Forms F, G, and H, completed by and made publicly available by Morton Wealth through 2012.**

Request Nos. 1 and 2 seek copies of the Morton Parties' filings with state and federal regulators, as well as copies of Form ADV Part 2.  These documents would provide basic information regarding how Morton Wealth represented itself and its activities publicly during the relevant timeframe.

The Morton Parties object to these requests "to the extent [they] seek documents that are publicly filed and publicly available."  The objection is meritless.  That Mr. Present might be able to obtain the same or similar information by some other means is insufficient to resist a proper discovery request seeking documents within the Morton Parties' possession, custody, or control.  *See Charter Practices Intern., LLC v. Robb*, 2014 WL 273855, at *2 (D. Conn. Jan. 23, 2014) (collecting cases); *Campo v. American Corrective Counseling Services*, 2008 WL 315474, at *2 (N.D. Cal. Aug. 1, 2008) ("[I]t is usually not objectionable when the information sought by discovery is a matter of public record.").[6]

**Request No. 3:  All federal tax filings by Morton Wealth for the years 2007, 2008, 2009, and 2010.**

Request 3 seeks Morton Wealth's federal tax filings for the years immediately before, during, and after the development and release of AlphaSector.  Given (1) that the claims against Mr. Present include purported misrepresentations regarding the size and volume of Morton Wealth's business, and (2) Mr. Present's contention that Morton mislead and lied to him, Morton Wealth's basic financial information in the objective and attested form of tax returns is certainly

---

[6]  Until 2011, ADV forms were not required by law to be physically filed with the SEC but were to be maintained and provided to all clients and prospective clients.

an appropriate object of discovery in this matter. Moreover, based on the confidentiality agreement entered into at the Morton Parties' insistence prior to any document production in response to the First Present Subpoenas, the Morton Parties' purported concerns regarding "abuse" and the like are entirely unfounded. Mr. Present does not seek Morton's personal tax filings.

**Request No. 4:** **All Communications through March 2011 within, between, or among Morton Wealth, Copeland, and Newfound Research concerning the investment strategies and objectives of the Edgartown Portfolio, Wellesley Portfolio, or Risk Managed Dividend Growth.**

**Request No. 5:** **All Documents through March 2011 concerning the identification, determination, and use of the analytical tools or technical research tools, quantitative sector signals, sector decisions, investment criteria, and other elements that constitute the Edgartown Portfolio, Wellesley Portfolio, or Risk Managed Dividend Growth.**

**Request No. 6:** **All Documents through March 2011 concerning the inception date for, performance of, and due diligence or quality control related to the Edgartown Portfolio, Wellesley Portfolio, or Risk Managed Dividend Growth, including all such marketing materials, publicly filed Documents, and Communications (including Communications between Morton Wealth and BIC Group, LLC, Newfound Research, the BRL Law Group, or F-Squared).**

Request Nos. 4 through 6 seek certain defined categories of documents concerning investment products that (a) Morton participated in creating and (b) competed with F-Squared's AlphaSector Rotation Index, at least to the extent that they were derived from the same strategy and utilized the same buy/sell signals from Newfound. The narrow requests target the Morton Parties' communications with the other entities involved in the development of these products (Request No. 4), as well as documents concerning the elements that comprised those products (Request Nos. 5 and 6)—including in particular statements about those elements of the products

7

that are the same as those behind AlphaSector.  Such documents are directly relevant to Mr. Present's defense in this case.[7]

**Request No. 7:  All marketing materials including Powerpoint documents, presentations, brochures, or pamphlets provided to any prospective client of Morton Wealth or David J. Morton during the years 2007 through 2010.**

**Request No. 8:  Documents sufficient to identify clients or customers to whom Morton Wealth or David J. Morton provided consulting services during 2007 through 2012, including the addresses of such clients or customers, the dates of initial engagement between such clients or customers and Morton Wealth or David J. Morton, and the volume of assets of such clients or customers at the time of initial engagement with Morton Wealth or David J. Morton.**

Request Nos. 7 and 8 seek, respectively, marketing materials provided to Morton Party clients during 2007 through 2010 (the period just before and after the development and introduction of AlphaSector), and information sufficient to identify Morton Party clients during 2007 through 2012.  This case is based largely, if not entirely, on alleged misrepresentations by Mr. Present that emanated directly from Morton with regard to Morton Wealth, Morton Wealth's business, and Morton Wealth's products, as well as the volume of assets that Morton and Morton Wealth had under management or advisement.  Hence, how Morton Wealth represented itself to its customers during this same timeframe, and the identity of those customers, is eminently discoverable and proportional in this matter.

## Conclusion

For the reasons set forth above, Mr. Present requests that the Court:

---

[7] Copeland, which is represented in this matter by the same counsel as the Morton Parties, has also refused to produce comparable documents sought in a subpoena issued to Copeland.  Thus, Mr. Present is being prevented from discovering any materials regarding what the Morton Parties or Copeland said or did about those elements of Copeland's products that were derived from the same sources as AlphaSector, and about which Mr. Present purportedly made misrepresentations based on what Morton had conveyed to him.

1. Issue an order compelling non-parties David J. Morton and Morton Wealth Advisors to produce any and all documents in their possession, custody, or control responsive to request numbers one (1) through eight (8) of the subpoenas issued to them on behalf of Defendant Howard B. Present and dated December 15, 2015; and

2. Grant such other relief as the Court deems just and appropriate.

Dated: February 1, 2016

Respectfully submitted,
HOWARD B. PRESENT,
By His Attorneys,

*/s/ Justin P. O'Brien*
Anthony E. Fuller (BBO# 633246)
Michael A. Collora (BBO # 092940)
Justin P. O'Brien (BBO# 658765)
Lauren A. Graber (BBO #679226)
**COLLORA LLP**
100 High Street, 20th Floor
Boston, Massachusetts 02110
(617) 371-1000 telephone
(617) 371-1037 fax
mcollora@collorallp.com
afuller@collorallp.com
jobrien@collorallp.com
lgraber@collorallp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 1, 2016.