# Exhibit A



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch St., 23rd Floor
Boston, MA 02110-1424
Telecopier: (617) 573-4590

DIVISION OF ENFORCEMENT

William J. Donahue
Senior Enforcement Counsel
(617) 573-8915
donahuew@sec.gov

December 20, 2013

**Via U.S. Mail and Secure E-mail**

Morton Wealth Advisors
c/o Jordan D. Hershman
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

Re:    In the Matter of F-Squared Investments, Inc. (B-02855)

Dear Sir or Madam:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to Morton Wealth Advisors ("Morton Wealth") in connection with the above-referenced formal investigation. The subpoena requires Morton Wealth to produce documents by January 3, 2014.

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of

Morton Wealth Advisors
c/o Jordon D. Hershman
December 20, 2013
Page 2

documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of your client complete a business records certification (a sample of which is enclosed) and return it with the document production.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

The information your client provides is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copies of SEC Form 1662, which also contain other important information. Please provide a copy of this form to your client. This investigation is

Morton Wealth Advisors
c/o Jordon D. Hershman
December 20, 2013
Page 3

confidential and nonpublic and should not be construed as an indication by the Commission or its staff that any violation of law has occurred, nor as a reflection upon any person, entity, or security.

      If you have any questions or would like to discuss this matter, you may call me at (617) 573-8915.

                            Sincerely,

                            William J. Donahue
                            Senior Enforcement Counsel

Enclosures:      Subpoena and Attachment
                    SEC Data Delivery Standards
                    SEC Form 1662
                    Business Records Certification



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of F-Squared Investments, Inc. (B-02855)**

To:    Morton Wealth Advisors
c/o   Jordan D. Hershman
       Bingham McCutchen LLP
       One Federal Street
       Boston, MA 02110-1726

☒    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

    ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than January 3, 2014 at 9:30 a.m.

           **FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
               Failure to comply may subject you to a fine and/or imprisonment.

By:                                  Date:   _12-20-2013_
       William J. Donahue, Senior Counsel
       U.S. Securities and Exchange Commission
       33 Arch Street, 23rd Floor
       Boston, Massachusetts 02110

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, Section 209(a) of the Investment Advisers Act of 1940, and Section 42(a) of the Investment Company Act of 1940.

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR MORTON WEALTH ADVISORS**
**December 20, 2013**
In the Matter of F-Squared Investments, Inc. (B-02855)

## A.   Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.  "Beaumont" means the entity Beaumont Financial Partners LLC (SEC File No. 801-57100) with its principal place of business at 20 Walnut Street, Suite #1, Wellesley Hills, Massachusetts 02481, including Beaumont's past or present parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.  "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

3.  "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

4.  "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

1

5.      The term "you" and "your" means the Person or entity to whom this subpoena was issued.

6.      To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

    a.      the word "or" means "and/or";

    b.      the word "and" means "and/or";

    c.      the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

    d.      the masculine gender includes the female gender and the female gender includes the masculine gender; and

    e.      the singular includes the plural and the plural includes the singular.

## B.      Instructions

1.      Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you must secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may

conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5. Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6. Documents should be labeled with sequential numbering (bates-stamped).

7. **You must produce all Documents created during, or Concerning, the period January 1, 2008 to the date of final compliance with this subpoena, unless otherwise specified.**

8. The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9. You are not required to produce exact duplicates of any Documents that have been previously produced to the Boston Regional Office of the Securities and Exchange Commission. If you are not producing Documents based upon a prior production to the Boston Regional Office of the Securities and Exchange Commission, please identify the responsive Documents that were previously produced.

10. For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11. This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing. The list should describe each item separately, noting:

    a.    its author(s);
    b.    its date;
    c.    its subject matter;

> d.   the name of the Person who has the item now, or the last Person known to have it;
>
> e.   the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
>
> f.   the basis upon which you are not producing the responsive Document;
>
> g.   the specific request in the subpoena to which the Document relates;
>
> h.   the attorney(s) and the client(s) involved; and
>
> i.   in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.   If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

## C.   **Documents to be Produced**

1.   All documents and communications concerning Beaumont.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever—
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony.*  Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.*  If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

3

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners:* The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## Data Delivery Standards

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/native file collections to the Securities and Exchange Commission. The SEC uses *Concordance*® 2007 v9.58 and *Concordance Image*® v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below, the proposed use of *Predictive Coding, computer-assisted review* or *technology-assisted review* (TAR), or the use of de-duplication during the processing of documents, must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF) and the methodology must be disclosed in the cover letter. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ........................................................................................................................... 1

Delivery Formats ............................................................................................................................... 2

    I.   *Concordance*® Production ............................................................................................... 2

        1.  Images ........................................................................................................... 2

        2.  *Concordance Image*® Cross-Reference File ............................................... 2

        3.  *Concordance*® Data File ............................................................................... 3

        4.  Text ............................................................................................................... 6

        5.  Linked Native Files ..................................................................................... 6

    II.  Audio Files ........................................................................................................... 6

    III.  Video Files ............................................................................................................ 7

    IV.  Electronic Trade and Bank Records .................................................................... 7

    V.  Electronic Phone Records ..................................................................................... 7

    VI.  Email Native File Production ............................................................................... 7

## General Instructions

1. A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
   The following information should be included in the letter:
   a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
   b. List of custodians, identifying:
      1) The Bates range (and any gaps therein) for each custodian
      2) Total number of records for each custodian
      3) Total number of images for each custodian
      4) Total number of native files for each custodian
   c. List of fields in the order in which they are listed in the data file.
   d. Time zone in which emails were standardized during conversion (email collections only).
2. Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3. Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4. Label all media with the following:
   a. Case number
   b. Production date
   c. Bates range
   d. Disk number (1 of X), if applicable

5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

## Delivery Formats

### I. *Concordance®* Production

All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:

The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

### 1. Images

a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
b. File names cannot contain embedded spaces.
c. Bates numbers should be endorsed on the lower right corner of all images.
d. The number of TIFF files per folder should not exceed 500 files.
e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
   1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
   2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
   3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

### 2. *Concordance Image®* Cross-Reference File

The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageID:* | The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
| *VolumeLabel:* | Optional |
| *ImageFilePath:* | The full path to the image file. |
| *DocumentBreak:* | The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document. |
| *FolderBreak:* | Leave empty |
| *BoxBreak:* | Leave empty |
| *PageCount:* | Optional |

Sample

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

3. *Concordance® Data File*
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:

   | Comma | ₥ | ASCII character (020) |
   |-------|---|------------------------|
   | Quote | þ | ASCII character (254) |
   | Newline | ® | ASCII character (174) |

   c. Date fields should be provided in the format:  mm/dd/yyyy
   d. All attachments should sequentially follow the parent document/email.
   e. All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

   f. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
      1) FIRSTBATES:   Beginning Bates number
      2) LASTBATES:    Ending Bates number
      3) IMAGEID:      Image Key field
      4) CUSTODIAN:    Individual from whom the document originated
      5) OCRTEXT:      Optical Character Recognition  (file path, or text)

   Sample of .DAT file (when text files are provided separately)

   ```
   þFIRSTBATESþ₥þLASTBATESþ₥þIMAGEIDþ₥þCUSTODIANþ₥þOCRTEXTþ
   þPC00000001þ₥þPC00000002þ₥þIMG0000001þ₥þSmith, Johnþ₥þE:\TEXT\PC00000001.TXTþ
   þPC00000003þ₥þPC00000003þ₥þIMG0000003þ₥þSmith, Johnþ₥þE:\TEXT\PC00000003.TXTþ
   þPC00000004þ₥þPC00000005þ₥þIMG0000004þ₥þSmith, Johnþ₥þE:\TEXT\PC00000004.TXTþ
   ```

   Sample of .DAT file (with text)

   ```
   þFIRSTBATESþ₥þLASTBATESþ₥þIMAGEIDþ₥þCUSTODIANþ₥þOCRTEXTþ
   þPC00000001þ₥þPC00000002þ₥þIMG0000001þ₥þSmith, Johnþ₥þ*** IMG0000001 ***®®The world of
   investing is fascinating and complex, and it can be very fruitful. But unlike the banking
   world, where deposits are guaranteed by the federal government, stocks, bonds and other
   securities can lose value. There are no guarantees. That's why investing is not a spectator
   sport. By far the best way for investors to protect the money they put into the securities
   markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that
   govern the securities industry in the United States derive from a simple and
   straightforward concept: all investors, whether large institutions or private individuals,
   should have access to certain basic facts about an investment prior to buying it, and so
   long as they hold it. To achieve this, the SEC requires public companies to disclose
   meaningful financial and other information to the public. This provides a common pool of
   knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a
   particular security. Only through the steady flow of timely, comprehensive, and accurate
   information can people make sound investment decisions.þ
   þPC00000003þ₥þPC00000003þ₥þIMG0000003þ₥þSmith, Johnþ₥þ***IMG0000003 ***®®The result of this
   information flow is a far more active, efficient, and transparent capital market that
   facilitates the capital formation so important to our nation's economy.þ
   þPC00000004þ₥þPC00000005þ₥þIMG0000004þ₥þSmith, Johnþ₥þ *** IMG0000004 ***®®To insure that
   this objective is always being met, the SEC continually works with all major market
   participants, including especially the investors in our securities markets, to listen to
   their concerns and to learn from their experience.®® *** IMG0000005 ***®®The SEC oversees
   the key participants in the securities world, including securities exchanges, securities
   brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
   primarily with promoting the disclosure of important market-related information,
   maintaining fair dealing, and protecting against fraud.þ
   ```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email <br> **The LASTBATES field should be populated <br> for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email <br> **This PARENT_BATES field should be populated <br> in each record representing an attachment "child" <br> document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments <br> **The CHILD_BATES field should be populated in <br> each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided <br> Native: Individual from whom the document <br> originated |
| FROM | John Smith | Email: Sender <br> Native: Author(s) of document <br> **semi-colon should be used to separate multiple <br> entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s) <br> **semi-colon should be used to separate multiple <br> entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s) <br> **semi-colon should be used to separate multiple <br> entries |
| BCC | John Cain | Blind carbon copy recipient(s) <br> **semi-colon should be used to separate multiple <br> entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email <br> Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent <br> Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent <br> Native: (empty) <br> **This data must be a separate field and cannot be <br> combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document <br> **The linked file must be named per the <br> FIRSTBATES number |
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) <br> Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) <br> Native: Date the document was created |

U.S. Securities and Exchange Commission
Data Delivery Standards

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

U.S. Securities and Exchange Commission
Data Delivery Standards

4. **Text**
Searchable text of the entire document must be provided for every record, at the document level.

   a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

   b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

   Sample page markers with OCR text:

   > *** IMG0000001 ***
   >
   > The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
   >
   > *** IMG0000002 ***
   >
   > The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

   c. For redacted documents, provide the full text for the redacted version.

   d. Delivery
   The text can be delivered two ways:
   1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
   2) Included in the .DAT file.

5. **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

II. **Audio Files**
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

**III.   Video Files**
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**IV.   Electronic Trade and Bank Records**
When producing electronic trade and bank records, provide the files in one of the following formats:

1.   MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.   Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V.   Electronic Phone Records**
When producing electronic phone records, provide the files in one of the following formats:

1.   MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeros as text).

2.   Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

The metadata must include, at a minimum, the following fields in separate columns:

| | | |
|---|---|---|
| 1) | Account Number: | Caller's telephone account number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Terminating Number: | Called party's phone number |
| 4) | Connection Date: | Date of call |
| 5) | Connection Time: | Start time of call |
| 6) | End Time: | End time of call |
| 7) | Elapsed Time: | Duration in minutes of the call |

Each field of data must be loaded into a separate column.  For example, Connection Date and Connection Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed here must also be loaded into separate columns.

**VI.   Email Native File Production**
When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.

[FOR DOMESTIC U.S. RECORDS]

### DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
### OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1.   I am employed by [*insert name of company*] as [*insert position*] and by reason of my position am authorized and qualified to make this declaration.  [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2.   I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

   (a)  made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

   (b)  kept in the course of regularly conducted business activity; and

   (c)  made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on [*date*].

_____

[*Name*]



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch St., 23rd Floor
Boston, MA 02110-1424
Telecopier: (617) 573-4590

**DIVISION OF ENFORCEMENT**

William J. Donahue
Senior Enforcement Counsel
(617) 573-8915
donahuew@sec.gov

December 20, 2013

**Via U.S. Mail and Secure E-mail**

David Jay Morton
c/o Jordan D. Hershman
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726
Fax: (617) 951-8736

Re:     In the Matter of F-Squared Investments, Inc. (B-02855)

Dear Sir or Madam:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to David Jay Morton ("Morton") in connection with the above-referenced formal investigation. The subpoena requires Morton to produce documents by January 3, 2014.

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of

David Jay Morton
c/o Jordon D. Hershman
December 20, 2013
Page 2

documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of your client complete a business records certification (a sample of which is enclosed) and return it with the document production.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

The information your client provides is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copies of SEC Form 1662, which also contain other important information. Please provide a copy of this form to your client. This investigation is

David Jay Morton
c/o Jordon D. Hershman
December 20, 2013
Page 3

confidential and nonpublic and should not be construed as an indication by the Commission or its staff that any violation of law has occurred, nor as a reflection upon any person, entity, or security.

If you have any questions or would like to discuss this matter, you may call me at (617) 573-8915.

Sincerely,

William J. Donahue
Senior Enforcement Counsel

Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662
                Business Records Certification



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of F-Squared Investments, Inc. (B-02855)**

To:  David Jay Morton
c/o  Jordan D. Hershman
     Bingham McCutchen LLP
     One Federal Street
     Boston, MA 02110-1726

☒  **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than January 3, 2014 at 9:30 a.m.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**. Failure to comply may subject you to a fine and/or imprisonment.

By: _____    Date: _12·20·2013_
    William J. Donahue, Senior Counsel
    U.S. Securities and Exchange Commission
    33 Arch Street, 23rd Floor
    Boston, Massachusetts 02110

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, Section 209(a) of the Investment Advisers Act of 1940, and Section 42(a) of the Investment Company Act of 1940.

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR DAVID JAY MORTON**
**December 20, 2013**
In the Matter of F-Squared Investments, Inc. (B-02855)

**A.    Definitions**

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.  "Beaumont" means the entity Beaumont Financial Partners LLC (SEC File No. 801-57100) with its principal place of business at 20 Walnut Street, Suite #1, Wellesley Hills, Massachusetts 02481, including Beaumont's past or present parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.  "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

3.  "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

4.  "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

1

5.      The term "you" and "your" means the Person or entity to whom this subpoena was issued.

6.      To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

     a.      the word "or" means "and/or";

     b.      the word "and" means "and/or";

     c.      the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

     d.      the masculine gender includes the female gender and the female gender includes the masculine gender; and

     e.      the singular includes the plural and the plural includes the singular.

**B.      Instructions**

1.      Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same.  Documents responsive to this subpoena may be in electronic or paper form.  Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards.  All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.      For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals.  The Commission cannot reimburse you for the copying costs.  If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards.  Alternatively, you may send us photocopies of the Documents in paper format.  If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place.  The staff may later request or require that you produce the originals.

3.      Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print.  Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one.  For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.      In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may

2

conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.  Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6.  Documents should be labeled with sequential numbering (bates-stamped).

7.  **You must produce all Documents created during, or Concerning, the period January 1, 2008 to the date of final compliance with this subpoena, unless otherwise specified.**

8.  The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.  You are not required to produce exact duplicates of any Documents that have been previously produced to the Boston Regional Office of the Securities and Exchange Commission. If you are not producing Documents based upon a prior production to the Boston Regional Office of the Securities and Exchange Commission, please identify the responsive Documents that were previously produced.

10. For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11. This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing. The list should describe each item separately, noting:

     a.   its author(s);
     b.   its date;
     c.   its subject matter;

3

    d.     the name of the Person who has the item now, or the last Person
known to have it;

    e.     the names of everyone who ever had the item or a copy of it, and
the names of everyone who was told the item's contents;

    f.     the basis upon which you are not producing the responsive
Document;

    g.     the specific request in the subpoena to which the Document relates;

    h.     the attorney(s) and the client(s) involved; and

    i.     in the case of the work product doctrine, the litigation for which
the Document was prepared in anticipation.

12.    If Documents responsive to this subpoena no longer exist because they
have been lost, discarded, or otherwise destroyed, you should identify
such Documents and give the date on which they were lost, discarded or
destroyed.

## C.    <u>Documents to be Produced</u>

1.    Your federal and state tax returns, including all schedules and attachments,
filed for the periods ending December 31, 2008, December 31, 2009,
December 31, 2010, December 31, 2011, and December 31, 2012.

2.    All documents and communications concerning Beaumont.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (08-13)

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony.*  Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.*  If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

2

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



# U.S. Securities and Exchange Commission

## Data Delivery Standards

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses *Concordance®* 2007 v9.58 and *Concordance Image®* v4.53 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below, the proposed use of *Predictive Coding*, *computer-assisted review* or *technology-assisted review* (TAR), or the use of de-duplication during the processing of documents, must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF) and the methodology must be disclosed in the cover letter. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ............................................................................................................................ 1

Delivery Formats ................................................................................................................................. 2

   I.    *Concordance®* Production ........................................................................................................ 2

         1.   Images ......................................................................................................................... 2

         2.   *Concordance Image®* Cross-Reference File ............................................................... 2

         3.   *Concordance®* Data File ............................................................................................ 3

         4.   Text ............................................................................................................................. 6

         5.   Linked Native Files .................................................................................................... 6

   II.   Audio Files ............................................................................................................................ 6

   III.  Video Files ............................................................................................................................ 7

   IV.   Electronic Trade and Bank Records ...................................................................................... 7

   V.    Electronic Phone Records ..................................................................................................... 7

   VI.   Email Native File Production ................................................................................................ 7

## General Instructions

1. A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
   The following information should be included in the letter:
   a. List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
   b. List of custodians, identifying:
      1) The Bates range (and any gaps therein) for each custodian
      2) Total number of records for each custodian
      3) Total number of images for each custodian
      4) Total number of native files for each custodian
   c. List of fields in the order in which they are listed in the data file.
   d. Time zone in which emails were standardized during conversion (email collections only).
2. Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
3. Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
4. Label all media with the following:
   a. Case number
   b. Production date
   c. Bates range
   d. Disk number (1 of X), if applicable

5.  Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6.  All productions should be checked and produced free of computer viruses.
7.  All produced media should be encrypted.
8.  Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

## Delivery Formats

**I.  Concordance® Production**

All scanned paper, email and native file collections should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian., i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for Concordance® and Concordance Image®.

1.  **Images**
    a.  Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
    b.  File names cannot contain embedded spaces.
    c.  Bates numbers should be endorsed on the lower right corner of all images.
    d.  The number of TIFF files per folder should not exceed 500 files.
    e.  Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
        1)  PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
        2)  AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
        3)  Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2.  **Concordance Image® Cross-Reference File**
    The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

    The format is as follows:
    *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

    | *ImageID:* | The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
    |---|---|
    | *VolumeLabel:* | Optional |
    | *ImageFilePath:* | The full path to the image file. |
    | *DocumentBreak:* | The letter "Y" denotes the first page of a document.  If this field is blank, then the page is not the first page of a document. |
    | *FolderBreak:* | Leave empty |
    | *BoxBreak:* | Leave empty |
    | *PageCount:* | Optional |

Sample

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

3. *Concordance® Data File*
The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

a.   The first line of the .DAT file must be a header row identifying the field names.
b.   The .DAT file must use the following *Concordance®* default delimiters:

   Comma      ¶      ASCII character (020)
   Quote       þ      ASCII character (254)
   Newline     ®      ASCII character (174)

c.   Date fields should be provided in the format:  mm/dd/yyyy
d.   All attachments should sequentially follow the parent document/email.
e.   All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

f.   The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
   1)   FIRSTBATES:   Beginning Bates number
   2)   LASTBATES:    Ending Bates number
   3)   IMAGEID:       Image Key field
   4)   CUSTODIAN:    Individual from whom the document originated
   5)   OCRTEXT:      Optical Character Recognition (file path, or text)

Sample of .DAT file (when text files are provided separately)

```
þFIRSTBATESþ¶þLASTBATESþ¶þIMAGEIDþ¶þCUSTODIANþ¶þOCRTEXTþ
þPC00000001þ¶þPC00000002þ¶þIMG0000001þ¶þSmith, Johnþ¶þE:\TEXT\PC00000001.TXTþ
þPC00000003þ¶þPC00000003þ¶þIMG0000003þ¶þSmith, Johnþ¶þE:\TEXT\PC00000003.TXTþ
þPC00000004þ¶þPC00000005þ¶þIMG0000004þ¶þSmith, Johnþ¶þE:\TEXT\PC00000004.TXTþ
```

Sample of .DAT file (with text)

```
þFIRSTBATESþ¶þLASTBATESþ¶þIMAGEIDþ¶þCUSTODIANþ¶þOCRTEXTþ
þPC00000001þ¶þPC00000002þ¶þIMG0000001þ¶þSmith, Johnþ¶þ*** IMG0000001 ***®®The world of --
investing is fascinating and complex, and it can be very fruitful. But unlike the banking
world, where deposits are guaranteed by the federal government, stocks, bonds and other
securities can lose value. There are no guarantees. That's why investing is not a spectator
sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that
govern the securities industry in the United States derive from a simple and
straightforward concept: all investors, whether large institutions or private individuals,
should have access to certain basic facts about an investment prior to buying it, and so
long as they hold it. To achieve this, the SEC requires public companies to disclose
meaningful financial and other information to the public. This provides a common pool of
knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a
particular security. Only through the steady flow of timely, comprehensive, and accurate
information can people make sound investment decisions.þ
þPC00000003þ¶þPC00000003þ¶þIMG0000003þ¶þSmith, Johnþ¶þ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that
facilitates the capital formation so important to our nation's economy.þ
þPC00000004þ¶þPC00000005þ¶þIMG0000004þ¶þSmith, Johnþ¶þ *** IMG0000004 ***®®To insure that
this objective is always being met, the SEC continually works with all major market
participants, including especially the investors in our securities markets, to listen to
their concerns and to learn from their experience.®® *** IMG0000005 ***®®The SEC oversees
the key participants in the securities world, including securities exchanges, securities
brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information,
maintaining fair dealing, and protecting against fraud.þ
```

U.S. Securities and Exchange Commission
Data Delivery Standards

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email:  mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email:  Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email:  Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

U.S. Securities and Exchange Commission
Data Delivery Standards

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

**4. Text**

Searchable text of the entire document must be provided for every record, at the document level.

a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance*® ImageID .

Sample page markers with OCR text:

> *** IMG0000001 ***
>
> The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
>
> *** IMG0000002 ***
>
> The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

c. For redacted documents, provide the full text for the redacted version.

d. Delivery
   The text can be delivered two ways:
   1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
   2) Included in the .DAT file.

**5. Linked Native Files**

Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

**II. Audio Files**

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |
| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

**III.    Video Files**
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

**IV.    Electronic Trade and Bank Records**
When producing electronic trade and bank records, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

**V.    Electronic Phone Records**
When producing electronic phone records, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.  Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeros as text).

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

The metadata must include, at a minimum, the following fields in separate columns:

1) Account Number:        Caller's telephone account number
2) Originating Number:    Caller's phone number
3) Terminating Number:    Called party's phone number
4) Connection Date:       Date of call
5) Connection Time:       Start time of call
6) End Time:              End time of call
7) Elapsed Time:          Duration in minutes of the call

Each field of data must be loaded into a separate column.  For example, Connection Date and Connection Time must be produced in separate columns and not combined into a single column containing both pieces of information.  Any fields of data that are provided in addition to those listed here must also be loaded into separate columns.

**VI.    Email Native File Production**
When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format.  A separate folder should be provided for each custodian.

[FOR DOMESTIC U.S. RECORDS]

## DECLARATION OF *[Insert Name]* CERTIFYING RECORDS
## OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, *[insert name]*, pursuant to 28 U.S.C. § 1746, declare that:

1.    I am employed by *[insert name of company]* as *[insert position]* and by reason of
my position am authorized and qualified to make this declaration.  *[if possible
supply additional information as to how person is qualified to make declaration,
e.g., I am custodian of records, I am familiar with the company's recordkeeping
practices or systems, etc.]*

2.    I further certify that the documents *[attached hereto or submitted herewith]* and
stamped *[insert bates range]* are true copies of records that were:

(a)  made at or near the time of the occurrence of the matters set forth therein, by,
or from information transmitted by, a person with knowledge of those matters;

(b)  kept in the course of regularly conducted business activity; and

(c)  made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on
*[date]*.

_____
*[Name]*



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch St., 23rd Floor
Boston, MA 02110-1424
Telecopier: (617) 573-4590

DIVISION OF ENFORCEMENT

Robert Baker
Senior Enforcement Counsel
(617) 573-8918

October 2, 2013

**Via U.S. Mail and Secure E-mail**

Morton Wealth Advisors
c/o Jordan D. Hershman
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726

Re:   In the Matter of F-Squared Investments, Inc. (B-02855)

Dear Sir or Madam:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents and testimony issued to Morton Wealth Advisors ("Morton Wealth") in connection with the above-referenced formal investigation. The subpoena requires Morton Wealth to produce documents by October 11, 2013.

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if your client prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the document subpoena, including all metadata, should also be produced in their native software format.** If you have any questions concerning the production of

Morton Wealth Advisors
c/o Jordon D. Hershman
October 2, 2013
Page 2

documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of your client complete a business records certification (a sample of which is enclosed) and return it with the document production.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

The information your client provides is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copies of SEC Form 1662, which also contain other important information. Please provide a copy of this form to your client. This investigation is

Morton Wealth Advisors
c/o Jordon D. Hershman
October 2, 2013
Page 3

confidential and nonpublic and should not be construed as an indication by the Commission or its staff that any violation of law has occurred, nor as a reflection upon any person, entity, or security.

If you have any questions or would like to discuss this matter, you may call me at (617) 573-8918.

Sincerely,

Robert Baker
Senior Enforcement Counsel

Enclosures:     Subpoena and Attachment
                SEC Data Delivery Standards
                SEC Form 1662
                Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of F-Squared Investments, Inc. (B-02855)**

To:    Morton Wealth Advisors
c/o   Jordan D. Hershman
      Bingham McCutchen LLP
      One Federal Street
      Boston, MA 02110-1726

☒    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973, Washington, DC 20549-5973, no later than October 11, 2013 at 9:30 a.m.

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____    Date: _10-2-13_____
    Robert Baker, Senior Enforcement Counsel
    U.S. Securities and Exchange Commission
    33 Arch Street, 23rd Floor
    Boston, Massachusetts 02110

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934, Section 209(a) of the Investment Advisers Act of 1940, and Section 42(a) of the Investment Company Act of 1940.

NOTICE TO WITNESS:    If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR MORTON WEALTH ADVISORS**
**October 2, 2013**
<u>In the Matter of F-Squared Investments, Inc. (B-02855)</u>

A.   <u>Definitions</u>

As used in this subpoena, the words and phrases listed below shall have the following
meanings:

1.   "Morton Wealth Advisors," means the investment adviser registered with
     the state of Massachusetts and headquartered at 60 Walnut Street in
     Wellesley, Massachusetts, including parents, subsidiaries, affiliates,
     predecessors, successors, officers, directors, employees, agents, general
     partners, limited partners, partnerships and aliases, code names, or trade or
     business names used by any of the foregoing.

2.   "Morton" means (i) David Jay Morton (CRD# 2238613), a former
     employee of Wachovia, and/or (ii) any present or former representative of
     Morton.

3.   "Capobianco" means (i) Michael John Capobianco (CRD# 2159543), a
     former employee of Wachovia, and/or (ii) any present or former
     representative of Capobianco.

4.   "F-Squared" means the entities doing business under the names "F-
     Squared Investment Management, LLC" "F-Squared Investments, Inc."
     (SEC File No. 801-69937), "F-Squared Institutional Advisors, LLC" (SEC
     File No. 801-71753), "F-Squared Alternative Investments, LLC" (SEC
     File No. 801-72940), "F-Squared Capital, LLC" (SEC File No. 801-
     77989), "F-Squared Retirement Solutions, LLC" (SEC File No. 801-
     72396), or "Active Index Solutions, LLC," including parents, subsidiaries,
     affiliates, predecessors, successors, officers, directors, employees, agents,
     general partners, limited partners, partnerships and aliases, code names, or
     trade or business names used by any of the foregoing.

5.   "Newfound" means the entities doing business under the names
     "Newfound Holdings, LLC," "Newfound Research, LLC" (SEC File No.
     801-73042), "Newfound Investments, LLC" (SEC File No. 801-77272),
     including parents, subsidiaries, affiliates, predecessors, successors,
     officers, directors, employees, agents, general partners, limited partners,
     partnerships and aliases, code names, or trade or business names used by
     any of the foregoing.

6.   "Virtus" means the entities doing business under the names "Virtus
     Partners, Inc.," "Virtus Investment Advisers, Inc." (SEC File No. 801-

1

5995), "Euclid Advisors LLC" (SEC File No. 801-54263), or collective funds advised by or sub-advised by Virtus or F-Squared (including, but not limited to, Virtus Allocator Premium, Virtus AlphaSector Rotation, Virtus Global Premium, Virtus Premium AlphaSector, Virtus Dynamic AlphaSector, or Virtus Variable Insurance Trust), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

7.   "Present" means (i) Howard Brian Present (CRD# 5507617), a principal of F-Squared, and/or (ii) any present or former representative of Present.

8.   "Hoffstein" means (i) Corey Michael Hoffstein (CRD# 6014681), a principal of Newfound, and/or (ii) any present or former representative of Hoffstein.

9.   "Rosedale" means (i) Thomas Brien Rosedale (CRD# 5909878), a principal of Newfound, and/or (ii) any present or former representative of Rosedale.

10.   "AlphaSector Strategies" means investment portfolios advised or sub-advised by F-Squared that track F-Squared's AlphaSector Indexes.

11.   "AlphaSector Indexes" means the more than 70 standard and/or customized indexes that utilize exchange traded funds or short-term bonds based on security decisions purportedly made by F-Squared that are purportedly designed to achieve relative performance in rising markets and risk controls in declining markets.

12.   "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

13.   A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

14.   "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices,

instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

15.     "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

16.     "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

17.     An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

18.     The terms "Reviewed" means examined, assessed, considered, analyzed or evaluated.

19.     The term "you" and "your" means the Person or entity to whom this subpoena was issued.

20.     To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

        a.      the word "or" means "and/or";
        b.      the word "and" means "and/or";

3

c.   the functional words "each," "every" "any" and "all" shall each be
     deemed to include each of the other functional words;

d.   the masculine gender includes the female gender and the female
     gender includes the masculine gender; and

e.   the singular includes the plural and the plural includes the singular.

**B.   Instructions**

1.   Unless otherwise specified, the subpoena calls for production of the
     original Documents and all copies and drafts of same. Documents
     responsive to this subpoena may be in electronic or paper form.
     Electronic Documents such as email should be produced in accordance
     with the attached Document entitled SEC Data Delivery Standards. All
     electronic Documents responsive to the Document subpoena, including all
     metadata, should also be produced in their native software format.

2.   For Documents in paper format, you may send the originals, or, if you
     prefer, you may send copies of the originals. The Commission cannot
     reimburse you for the copying costs. If you are sending copies, the staff
     requests that you scan (rather than photocopy) hard copy Documents and
     produce them in an electronic format consistent with the SEC Data
     Delivery Standards. Alternatively, you may send us photocopies of the
     Documents in paper format. If you choose to send copies, you must
     secure and retain the originals and store them in a safe place. The staff
     may later request or require that you produce the originals.

3.   Whether you scan or photocopy Documents, the copies must be identical
     to the originals, including even faint marks or print. Also, please note that
     if copies of a Document differ in any way, they are considered separate
     Documents and you must send each one. For example, if you have two
     copies of the same letter, but only one of them has handwritten notes on it,
     you must send both the clean copy and the one with notes.

4.   In producing a photocopy of an original Document that contains post-it(s),
     notation flag(s), or other removable markings or attachments which may
     conceal all or a portion of the markings contained in the original
     Document, photocopies of the original Document both with and without
     the relevant post-it(s), notation flag(s), or removable markings or
     attachments should be produced.

5.   Documents should be produced as they are kept in the ordinary course of
     business or be organized and labeled to correspond with the categories in
     this request. In that regard, Documents should be produced in a unitized
     manner, *i.e.*, delineated with staples or paper clips to identify the
     Document boundaries.

6.      Documents should be labeled with sequential numbering (bates-stamped).

7.      **You must produce all Documents created during, or Concerning, the period January 1, 2000 to the date of final compliance with this subpoena, unless otherwise specified.**

8.      The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.      You are not required to produce exact duplicates of any Documents that have been previously produced to the Boston Regional Office of the Securities and Exchange Commission.  If you are not producing Documents based upon a prior production to the Boston Regional Office of the Securities and Exchange Commission, please identify the responsive Documents that were previously produced.

10.     For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11.     This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below.  If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing.  The list should describe each item separately, noting:

        a.      its author(s);
        b.      its date;
        c.      its subject matter;
        d.      the name of the Person who has the item now, or the last Person known to have it;
        e.      the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
        f.      the basis upon which you are not producing the responsive Document;
        g.      the specific request in the subpoena to which the Document relates;
        h.      the attorney(s) and the client(s) involved; and
        i.      in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12.     If Documents responsive to this subpoena no longer exist because they

have been lost, discarded, or otherwise destroyed, you should identify
such Documents and give the date on which they were lost, discarded or
destroyed.

**C.**   **Documents to be Produced**

1.   Trade blotters in Microsoft Excel or other comma-delimited format for all
     trades executed for brokerage customers or accounts advised by Morton
     Wealth Advisors, Morton, or Capobianco. In the trade blotters, please
     include at least the following columns: (a) trade date; (b) settlement date;
     (c) security CUSIP number; (d) security description; (e) transaction type
     (e.g., buy, sell, buy cancel, sell cancel, short sale); (f) amount of units or
     shares; (g) price per share; (h) total purchase or sale price including
     principal and accrued interest; (l) total commission; (m) customer/client
     name; and (n) account number. Please also include a brief description of
     all column headings.

2.   All communications with or concerning F-Squared, Present, Newfound,
     Virtus, Hoffstein, Rosedale, AlphaSector Strategies, or AlphaSector
     Indexes, including, but not limited to, any voicemails received from
     Present.

3.   A list of all customers or clients of Morton Wealth Advisors, Morton, or
     Capobianco, including name, address, telephone number, current assets
     under management, and inception date as a customer or client of Morton
     Wealth Advisors, Morton, or Capobianco.

4.   All advertisements, marketing materials, sales literature, or presentations
     concerning AlphaSector Strategies or AlphaSector Indexes, including, but
     not limited to materials available on Morton Wealth Advisors' websites at
     any time.

5.   Documents sufficient to identify how all documents responsive to request
     number 4 were made available to prospective or current clients of Morton
     Wealth Advisors, Morton, or Capobianco.

6.   All documents and communications concerning the drafting, editing,
     review, or approval of all documents responsive to request number 4.

7.   All agreements between Morton Wealth Advisors, Morton, or Capobianco
     and any of their current or former advisory clients.

8.   All agreements between Morton Wealth Advisors, Morton, or Capobianco
     and F-Squared, Newfound, Virtus, Hoffstein, Rosedale.

9.   All documents and communications concerning the past performance of
     AlphaSector Strategies or AlphaSector Indexes.

10. All communications concerning any examination or investigation concerning F-Squared, including but not limited to an examination or investigation by the Commission, a state regulator, or FINRA.

11. Documents sufficient to identify all weekly or monthly holdings pursuant to any AlphaSector Strategies or AlphaSector Indexes.

12. All agreements to license the AlphaSector Strategies or AlphaSector Indexes, including, but not limited to, all agreements to use any algorithms that form the basis of securities decisions under the AlphaSector Strategies or AlphaSector Indexes.

13. All documents and communications concerning Morton or Morton Wealth Advisors management of assets that support the past performance of the AlphaSector Strategies or AlphaSector Indexes.

[FOR DOMESTIC U.S. RECORDS]

## DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
## OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1.    I am employed by [*insert name of company*] as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2.    I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

(a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

(b) kept in the course of regularly conducted business activity; and

(c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].

_____
[*Name*]



## U.S. Securities and Exchange Commission

### Data Delivery Standards

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses Recommind® *Axcelerate* v4.5 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below, the proposed use of *Predictive Coding, computer-assisted review* or *technology-assisted review* (TAR), or the use of de-duplication during the processing of documents, must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF) and the methodology must be disclosed in the cover letter. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ........................................................................................................................................................1

Delivery Formats...........................................................................................................................................................2

   I.   Structured Data - *Concordance*® Format........................................................................................................ 2

      1.  Images .................................................................................................................................................. 2

      2.  *Concordance Image*® Cross-Reference File................................................................................... 2

      3.  *Concordance*® Data File.................................................................................................................. 3

      4.  Text ..................................................................................................................................................... 6

      5.  Linked Native Files .......................................................................................................................... 6

  II.   Native File Production ............................................................................................................................... 6

 III.  Audio Files ................................................................................................................................................ 6

 IV.  Video Files................................................................................................................................................. 7

  V.  Electronic Trade and Bank Records ......................................................................................................... 7

 VI.  Electronic Phone Records......................................................................................................................... 7

**General Instructions**

   1.  A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
      The following information should be included in the letter:
      a.  List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
      b.  List of custodians, identifying:
         1)  The Bates range (and any gaps therein) for each custodian
         2)  Total number of records for each custodian
         3)  Total number of images for each custodian
         4)  Total number of native files for each custodian
      c.  List of fields in the order in which they are listed in the data file.
      d.  Time zone in which emails were standardized during conversion (email collections only).
   2.  Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
   3.  Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
   4.  Label all media with the following:
      a.  Case number
      b.  Production date
      c.  Bates range
      d.  Disk number (1 of X), if applicable

5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

**Delivery Formats**

I. **Structured Data - *Concordance*® Format**
The SEC prefers that all data be produced in structured format prepared for *Concordance*®. All scanned paper, email and native file collections should be converted / processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian, i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance*® and *Concordance Image*®.

1. **Images**
   a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
   b. File names cannot contain embedded spaces.
   c. Bates numbers should be endorsed on the lower right corner of all images.
   d. The number of TIFF files per folder should not exceed 500 files.
   e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
      1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
      2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
      3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2. ***Concordance Image*® Cross-Reference File**
   The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

   The format is as follows:
   *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

   | | |
   |---|---|
   | *ImageID*: | The unique designation that *Concordance*® and *Concordance Image*® use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
   | *VolumeLabel*: | Optional |
   | *ImageFilePath*: | The full path to the image file. |
   | *DocumentBreak*: | The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document. |
   | *FolderBreak*: | Leave empty |
   | *BoxBreak*: | Leave empty |
   | *PageCount*: | Optional |

Sample

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,Y,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

3. *Concordance®* Data File
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:

   | | | |
   |---|---|---|
   | Comma | ¶ | ASCII character (020) |
   | Quote | þ | ASCII character (254) |
   | Newline | ® | ASCII character (174) |

   c. Date fields should be provided in the format: mm/dd/yyyy
   d. All attachments should sequentially follow the parent document/email.
   e. All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

   f. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
      1) FIRSTBATES:   Beginning Bates number
      2) LASTBATES:    Ending Bates number
      3) IMAGEID:      Image Key field
      4) CUSTODIAN:    Individual from whom the document originated
      5) OCRTEXT:      Optical Character Recognition (file path, or text)

   Sample of .DAT file (when text files are provided separately)

```
þFIRSTBATESþ¶þLASTBATESþ¶þIMAGEIDþ¶þCUSTODIANþ¶þOCRTEXTþ
þPC00000001þ¶þPC00000002þ¶þIMG0000001þ¶þSmith, Johnþ¶þE:\TEXT\PC00000001.TXTþ
þPC00000003þ¶þPC00000003þ¶þIMG0000003þ¶þSmith, Johnþ¶þE:\TEXT\PC00000003.TXTþ
þPC00000004þ¶þPC00000005þ¶þIMG0000004þ¶þSmith, Johnþ¶þE:\TEXT\PC00000004.TXTþ
```

   Sample of .DAT file (with text)

```
þFIRSTBATESþ¶þLASTBATESþ¶þIMAGEIDþ¶þCUSTODIANþ¶þOCRTEXTþ
þPC00000001þ¶þPC00000002þ¶þIMG0000001þ¶þSmith, Johnþ¶þ*** IMG0000001 ***®®The world of
investing is fascinating and complex, and it can be very fruitful. But unlike the banking
world, where deposits are guaranteed by the federal government, stocks, bonds and other
securities can lose value. There are no guarantees. That's why investing is not a spectator
sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that
govern the securities industry in the United States derive from a simple and
straightforward concept: all investors, whether large institutions or private individuals,
should have access to certain basic facts about an investment prior to buying it, and so
long as they hold it. To achieve this, the SEC requires public companies to disclose
meaningful financial and other information to the public. This provides a common pool of
knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a
particular security. Only through the steady flow of timely, comprehensive, and accurate
information can people make sound investment decisions.þ
þPC00000003þ¶þPC00000003þ¶þIMG0000003þ¶þSmith, Johnþ¶þ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that
facilitates the capital formation so important to our nation's economy.þ
þPC00000004þ¶þPC00000005þ¶þIMG0000004þ¶þSmith, Johnþ¶þ *** IMG0000004 ***®®To insure that
this objective is always being met, the SEC continually works with all major market
participants, including especially the investors in our securities markets, to listen to
their concerns and to learn from their experience.®® *** IMG0000005 ***®®The SEC oversees
the key participants in the securities world, including securities exchanges, securities
brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information,
maintaining fair dealing, and protecting against fraud.þ
```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple Entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple Entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple Entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple Entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

U.S. Securities and Exchange Commission
Data Delivery Standards

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c2fcab58712467eab4004583eb8fb7f89 | MD5 Hash value of the document. |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4. **Text**
   Searchable text of the entire document must be provided for every record, at the document level.

   a. Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

   b. OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

   Sample page markers with OCR text:

   > *** IMG0000001 ***
   >
   > The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
   >
   > *** IMG0000002 ***
   >
   > The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

   c. For redacted documents, provide the full text for the redacted version.

   d. Delivery
      The text can be delivered two ways:
      1) As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
      2) Included in the .DAT file.

5. **Linked Native Files**
   Copies of original email and native file documents/attachments must be included for all electronic productions.
   a. Native file documents must be named per the FIRSTBATES number.
   b. The full path of the native file must be provided in the .DAT file for the LINK field.
   c. The number of native files per folder should not exceed 500 files.

II. **Native File Production**
The SEC will also accept native file productions. The files must be produced as they are maintained in the normal course of business. Data must be organized by custodian named file folders.

III. **Audio Files**
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |

| 5) | Date: | Date of call |
| 6) | Time: | Time of call |
| 7) | Filename: | Filename of audio file |

## IV.   Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## V.   Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1.   MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.   Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VI.   Electronic Phone Records

When producing electronic phone records, provide the files in one of the following formats:

1.   MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeros as text).

2.   Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

The metadata must include, at a minimum, the following fields in separate columns:

| 1) | Account Number: | Caller's telephone account number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Terminating Number: | Called party's phone number |
| 4) | Connection Date: | Date of call |
| 5) | Connection Time: | Start time of call |
| 6) | End Time: | End time of call |
| 7) | Elapsed Time: | Duration in minutes of the call |

Each field of data must be loaded into a separate column. For example, Connection Date and Connection Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed here must also be loaded into separate columns.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

#### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

#### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony whenever during your testimony you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned to afford you the opportunity to arrange to do so.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (03-10)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you or subject you to fine, penalty or forfeiture.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6. *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

**C. Submissions and Settlements**

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

**D. Freedom of Information Act**

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

**E. Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To coordinate law enforcement activities between the SEC and other federal, state, local or foreign law enforcement agencies, securities self regulatory organizations, and foreign securities authorities.

2. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

3. Where there is an indication of a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program statute, or by regulation, rule or order issued pursuant thereto, the relevant records in the system of records may be referred to the appropriate agency, whether federal, state, or local, a foreign governmental authority or foreign securities authority, or a securities self-regulatory organization charged with the responsibility of investigating or prosecuting such violation or charged with enforcing or implementing the statute or rule, regulation or order issued pursuant thereto.

4. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

5. To a federal, state, local or foreign governmental authority or foreign securities authority maintaining civil, criminal or other relevant enforcement information or other pertinent information, such as current licenses, if necessary to obtain information relevant to an agency decision concerning the hiring or retention of an employee, the issuance of a security clearance, the letting of a contract, or the issuance of a license, grant or other benefit.

6. To a federal, state, local or foreign governmental authority or foreign securities authority, in response to its request, in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

3

7. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

8. When considered appropriate, records in this system may be disclosed to a bar association, the American Institute of Certified Public Accountants, a state accountancy board or other federal, state, local or foreign licensing or oversight authority, foreign securities authority, or professional association or self regulatory authority performing similar functions, for possible disciplinary or other action.

9. In connection with investigations or disciplinary proceedings by a state securities regulatory authority, a foreign securities authority, or by a self regulatory organization involving one or more of its members.

10. As a data source for management information for production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies, and to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act or to locate specific individuals for personnel research or other personnel management functions.

11. In connection with their regulatory and enforcement responsibilities mandated by the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), or state or foreign laws regulating securities or other related matters, records may be disclosed to national securities associations that are registered with the Commission, the Municipal Securities Rulemaking Board, the Securities Investor Protection Corporation, the federal banking authorities, including but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation, state securities regulatory or law enforcement agencies or organizations, or regulatory law enforcement agencies of a foreign government, or foreign securities authority.

12. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or the Commission's Rules of Practice, 17 CFR 201.100 - 900, or otherwise, where such trustee, receiver, master, special counsel or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice.

13. To any persons during the course of any inquiry or investigation conducted by the Commission's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

14. To any person with whom the Commission contracts to reproduce, by typing, photocopy or other means, any record within this system for use by the Commission and its staff in connection with their official duties or to any person who is utilized by the Commission to perform clerical or stenographic functions relating to the official business of the Commission.

15. Inclusion in reports published by the Commission pursuant to authority granted in the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)).

16. To members of advisory committees that are created by the Commission or by the Congress to render advice and recommendations to the Commission or to the Congress, to be used solely in connection with their official designated functions.

17. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 735-18, and who assists in the investigation by the Commission of possible violations of federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

18. Disclosure may be made to a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

19. To respond to inquiries from Members of Congress, the press and the public which relate to specific matters that the Commission has investigated and to matters under the Commission's jurisdiction.

4

20. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78u(a), as amended.

21. To respond to subpoenas in any litigation or other proceeding.

22. To a trustee in bankruptcy.

23. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office
33 Arch St., 23rd Floor
Boston, MA 02110-1424
Telecopier: (617) 573-4590

**DIVISION OF ENFORCEMENT**

Robert Baker
Senior Enforcement Counsel
(617) 573-8918

October 2, 2013

**Via U.S. Mail and Secure E-mail**

David Jay Morton
c/o Jordan D. Hershman
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110-1726
Fax: (617) 951-8736

Re:   In the Matter of F-Squared Investments, Inc. (B-02855)

Dear Sir or Madam:

Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules
Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents and
testimony issued to David Jay Morton ("Morton") in connection with the above-referenced
formal investigation.  The subpoena requires Morton to produce documents by October 11, 2013.

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to
the following email address: ENF-CPU@sec.gov.

Please carefully read the subpoena attachment, which contains, among other things,
important instructions related to the manner of producing documents.  In particular, if your client
prefers to send us copies of original documents, **the staff requests that you scan and produce
hard copy documents, as well as electronic documents, in an electronic format consistent
with the SEC Data Delivery Standards attached hereto.  All electronic documents
responsive to the document subpoena, including all metadata, should also be produced in
their native software format.**  If you have any questions concerning the production of

David Jay Morton
c/o Jordon D. Hershman
October 2, 2013
Page 2

documents in an electronic format, please contact me as soon as possible and in any event before producing documents.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should state to which paragraph(s) in the subpoena attachment each item responds. Please also state in the cover letter(s) whether you believe your client has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

In addition, for any documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please have the appropriate representative(s) of your client complete a business records certification (a sample of which is enclosed) and return it with the document production.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

The information your client provides is subject to the Commission's routine uses. A list of those uses is contained in the enclosed copies of SEC Form 1662, which also contain other important information. Please provide a copy of this form to your client. This investigation is

David Jay Morton
c/o Jordon D. Hershman
October 2, 2013
Page 3

confidential and nonpublic and should not be construed as an indication by the Commission or its staff that any violation of law has occurred, nor as a reflection upon any person, entity, or security.

If you have any questions or would like to discuss this matter, you may call me at (617) 573-8918.

Sincerely,

Robert Baker
Senior Enforcement Counsel

Enclosures:   Subpoena and Attachment
SEC Data Delivery Standards
SEC Form 1662
Business Records Certification



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

**In the Matter of F-Squared Investments, Inc. (B-02855)**

To:   David Jay Morton
c/o   Jordan D. Hershman
      Bingham McCutchen LLP
      One Federal Street
      Boston, MA 02110-1726

---

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the
    Securities and Exchange Commission, at the place, date and time specified below:

    ENF-CPU, U.S. Securities and Exchange Commission, 100 F St., N.E., Mailstop 5973,
    Washington, DC 20549-5973, no later than October 11, 2013 at 9:30 a.m.

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____   Date: _10-2-13_

Robert Baker, Senior Enforcement Counsel
U.S. Securities and Exchange Commission
33 Arch Street, 23rd Floor
Boston, Massachusetts 02110

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this
matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation
under: Section 20(a) of the Securities Act of 1933, Section 21(a) of the Securities Exchange Act of 1934,
Section 209(a) of the Investment Advisers Act of 1940, and Section 42(a) of the Investment Company Act of
1940.

---

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR DAVID JAY MORTON**
**October 2, 2013**
<u>In the Matter of F-Squared Investments, Inc. (B-02855)</u>

A.    <u>Definitions</u>

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1.    "Morton Wealth Advisors," means the investment adviser registered with the state of Massachusetts and headquartered at 60 Walnut Street in Wellesley, Massachusetts, including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2.    "Morton" means (i) David Jay Morton (CRD# 2238613), a former employee of Wachovia, and/or (ii) any present or former representative of Morton.

3.    "Capobianco" means (i) Michael John Capobianco (CRD# 2159543), a former employee of Wachovia, and/or (ii) any present or former representative of Capobianco.

4.    "F-Squared" means the entities doing business under the names "F-Squared Investment Management, LLC" "F-Squared Investments, Inc." (SEC File No. 801-69937), "F-Squared Institutional Advisors, LLC" (SEC File No. 801-71753), "F-Squared Alternative Investments, LLC" (SEC File No. 801-72940), "F-Squared Capital, LLC" (SEC File No. 801-77989), "F-Squared Retirement Solutions, LLC" (SEC File No. 801-72396), or "Active Index Solutions, LLC," including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

5.    "Newfound" means the entities doing business under the names "Newfound Holdings, LLC," "Newfound Research, LLC" (SEC File No. 801-73042), "Newfound Investments, LLC" (SEC File No. 801-77272), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

6.    "Virtus" means the entities doing business under the names "Virtus Partners, Inc.," "Virtus Investment Advisers, Inc." (SEC File No. 801-5995), "Euclid Advisors LLC" (SEC File No. 801-54263), or collective

1

funds advised by or sub-advised by Virtus or F-Squared (including, but
not limited to, Virtus Allocator Premium, Virtus AlphaSector Rotation,
Virtus Global Premium, Virtus Premium AlphaSector, Virtus Dynamic
AlphaSector, or Virtus Variable Insurance Trust), including parents,
subsidiaries, affiliates, predecessors, successors, officers, directors,
employees, agents, general partners, limited partners, partnerships and
aliases, code names, or trade or business names used by any of the
foregoing.

7.  "Present" means (i) Howard Brian Present (CRD# 5507617), a principal
    of F-Squared, and/or (ii) any present or former representative of Present.

8.  "Hoffstein" means (i) Corey Michael Hoffstein (CRD# 6014681), a
    principal of Newfound, and/or (ii) any present or former representative of
    Hoffstein.

9.  "Rosedale" means (i) Thomas Brien Rosedale (CRD# 5909878), a
    principal of Newfound, and/or (ii) any present or former representative of
    Rosedale.

10. "AlphaSector Strategies" means investment portfolios advised or sub-
    advised by F-Squared that track F-Squared's AlphaSector Indexes.

11. "AlphaSector Indexes" means the more than 70 standard and/or
    customized indexes that utilize exchange traded funds or short-term bonds
    based on security decisions purportedly made by F-Squared that are
    purportedly designed to achieve relative performance in rising markets
    and risk controls in declining markets.

12. "Person" means a natural person, firm, association, organization,
    partnership, business, trust, corporation, bank or any other private or
    public entity.

13. A "Representative" of a Person means any present or former family
    members, officers, executives, partners, joint-venturers, directors, trustees,
    employees, consultants, accountants, attorneys, agents, or any other
    representative acting or purporting to act on behalf of the Person.

14. "Document" shall include, but is not limited to, any written, printed, or
    typed matter including, but not limited to all drafts and copies bearing
    notations or marks not found in the original, letters and correspondence,
    interoffice communications, slips, tickets, records, worksheets, financial
    records, accounting documents, bookkeeping documents, memoranda,
    reports, manuals, telephone logs, telegrams, facsimiles, messages of any
    type, telephone messages, voice mails, tape recordings, notices,
    instructions, minutes, summaries, notes of meetings, file folder markings,

and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

15.   "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

16.   "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

17.   An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

18.   The terms "Reviewed" means examined, assessed, considered, analyzed or evaluated.

19.   The term "you" and "your" means the Person or entity to whom this subpoena was issued.

20.   To the extent necessary to bring within the scope of this subpoena any information or Documents that might otherwise be construed to be outside its scope:

   a.   the word "or" means "and/or";
   b.   the word "and" means "and/or";

c.     the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;

d.     the masculine gender includes the female gender and the female gender includes the masculine gender; and

e.     the singular includes the plural and the plural includes the singular.

**B.     <u>Instructions</u>**

1.     Unless otherwise specified, the subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All electronic Documents responsive to the Document subpoena, including all metadata, should also be produced in their native software format.

2.     For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3.     Whether you scan or photocopy Documents, the copies must be identical to the originals, including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4.     In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5.     Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, *i.e.*, delineated with staples or paper clips to identify the Document boundaries.

6.  Documents should be labeled with sequential numbering (bates-stamped).

7.  **You must produce all Documents created during, or Concerning, the period January 1, 2000 to the date of final compliance with this subpoena, unless otherwise specified.**

8.  The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9.  You are not required to produce exact duplicates of any Documents that have been previously produced to the Boston Regional Office of the Securities and Exchange Commission. If you are not producing Documents based upon a prior production to the Boston Regional Office of the Securities and Exchange Commission, please identify the responsive Documents that were previously produced.

10. For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the Document production.

11. This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what it is not producing. The list should describe each item separately, noting:

    a.  its author(s);
    b.  its date;
    c.  its subject matter;
    d.  the name of the Person who has the item now, or the last Person known to have it;
    e.  the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f.  the basis upon which you are not producing the responsive Document;
    g.  the specific request in the subpoena to which the Document relates;
    h.  the attorney(s) and the client(s) involved; and
    i.  in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

12. If Documents responsive to this subpoena no longer exist because they

have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

**C.**     **Documents to be Produced**

1.     Trade blotters in Microsoft Excel or other comma-delimited format for all trades executed for brokerage customers or accounts advised by Morton Wealth Advisors or Morton. In the trade blotters, please include at least the following columns: (a) trade date; (b) settlement date; (c) security CUSIP number; (d) security description; (e) transaction type (e.g., buy, sell, buy cancel, sell cancel, short sale); (f) amount of units or shares; (g) price per share; (h) total purchase or sale price including principal and accrued interest; (l) total commission; (m) customer/client name; and (n) account number. Please also include a brief description of all column headings.

2.     All communications with or concerning F-Squared, Present, Newfound, Virtus, Hoffstein, Rosedale, AlphaSector Strategies, or AlphaSector Indexes, including, but not limited to, any voicemails received from Present.

3.     A list of all customers or clients of Morton Wealth Advisors or Morton, including name, address, telephone number, current assets under management, and inception date as a customer or client of Morton Wealth Advisors or Morton.

4.     All advertisements, marketing materials, sales literature, or presentations concerning AlphaSector Strategies or AlphaSector Indexes.

5.     Documents sufficient to identify how all documents responsive to request number 4 were made available to prospective or current clients of Morton Wealth Advisors or Morton.

6.     All documents and communications concerning the drafting, editing, review, or approval of all documents responsive to request number 4.

7.     All agreements between Morton Wealth Advisors or Morton and any of their current or former advisory clients.

8.     All agreements between Morton Wealth Advisors, Morton, or Capobianco and F-Squared, Newfound, Virtus, Hoffstein, or Rosedale.

9.     All documents and communications concerning the past performance of AlphaSector Strategies or AlphaSector Indexes.

10.   All communications concerning any examination or investigation
      concerning F-Squared, including but not limited to an examination or
      investigation by the Commission, a state regulator, or FINRA.

11.   Documents sufficient to identify all weekly or monthly holdings pursuant
      to any AlphaSector Strategies or AlphaSector Indexes.

12.   All agreements to license the AlphaSector Strategies or AlphaSector
      Indexes, including, but not limited to, all agreements to use any algorithms
      that form the basis of securities decisions under the AlphaSector Strategies
      or AlphaSector Indexes.

13.   All documents and communications concerning Morton or Morton Wealth
      Advisors management of assets that support the past performance of the
      AlphaSector Strategies or AlphaSector Indexes.

[FOR DOMESTIC U.S. RECORDS]

### DECLARATION OF [*Insert Name*] CERTIFYING RECORDS
### OF REGULARLY CONDUCTED BUSINESS ACTIVITY

I, the undersigned, [*insert name*], pursuant to 28 U.S.C. § 1746, declare that:

1.  I am employed by [*insert name of company*] as [*insert position*] and by reason of my position am authorized and qualified to make this declaration. [*if possible supply additional information as to how person is qualified to make declaration, e.g., I am custodian of records, I am familiar with the company's recordkeeping practices or systems, etc.*]

2.  I further certify that the documents [*attached hereto or submitted herewith*] and stamped [*insert bates range*] are true copies of records that were:

    (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

    (b) kept in the course of regularly conducted business activity; and

    (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [*date*].

_____

[*Name*]

# U.S. Securities and Exchange Commission

## Data Delivery Standards

The following outlines the technical requirements for producing scanned paper collections, email and electronic document/ native file collections to the Securities and Exchange Commission. The SEC uses Recommind® *Axcelerate* v4.5 software to search, review and retrieve documents produced to us in electronic format. Any proposed production in a format other than those identified below, the proposed use of *Predictive Coding, computer-assisted review* or *technology-assisted review* (TAR), or the use of de-duplication during the processing of documents, must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF) and the methodology must be disclosed in the cover letter. We appreciate your efforts in assisting us by preparing data in a format that will enable our staff to use the data efficiently.

General Instructions ................................................................................................................................................................... 1

Delivery Formats ......................................................................................................................................................................... 2

   I.   Structured Data - *Concordance*® Format ......................................................................................................................... 2

      1.  Images ........................................................................................................................................................................ 2

      2.  *Concordance Image*® Cross-Reference File .......................................................................................................... 2

      3.  *Concordance*® Data File ......................................................................................................................................... 3

      4.  Text ............................................................................................................................................................................ 6

      5.  Linked Native Files .................................................................................................................................................. 6

   II.  Native File Production ..................................................................................................................................................... 6

   III. Audio Files ..................................................................................................................................................................... 6

   IV. Video Files ...................................................................................................................................................................... 7

   V.  Electronic Trade and Bank Records ............................................................................................................................ 7

   VI. Electronic Phone Records ............................................................................................................................................. 7

**General Instructions**

   1.  A cover letter should be included with each production. *This letter MUST be imaged and provided as the first record in the load file.*
      The following information should be included in the letter:
      a.  List of each piece of media (hard drive, thumb drive, DVD or CD) included in the production by the unique number assigned to it, and readily apparent on the physical media.
      b.  List of custodians, identifying:
         1)  The Bates range (and any gaps therein) for each custodian
         2)  Total number of records for each custodian
         3)  Total number of images for each custodian
         4)  Total number of native files for each custodian
      c.  List of fields in the order in which they are listed in the data file.
      d.  Time zone in which emails were standardized during conversion (email collections only).
   2.  Documents created or stored electronically MUST be produced in their original electronic format, not printed to paper or PDF.
   3.  Data can be produced on CD, DVD or hard drive; *use the media requiring the least number of deliverables.*
   4.  Label all media with the following:
      a.  Case number
      b.  Production date
      c.  Bates range
      d.  Disk number (1 of X), if applicable

5. Organize productions by custodian, unless otherwise instructed. All documents from an individual custodian should be confined to a single load file.
6. All productions should be checked and produced free of computer viruses.
7. All produced media should be encrypted.
8. Passwords for documents, files, compressed archives and encrypted media should be provided separately either via email or in a separate cover letter from the data.

**Delivery Formats**

I. **Structured Data – *Concordance®* Format**
The SEC prefers that all data be produced in structured format prepared for *Concordance®*. All scanned paper, email and native file collections should be converted / processed to TIFF files, Bates numbered, and include fully searchable text. Additionally, email and native file collections should include linked native files.

Bates numbering documents:
The Bates number must be a unique, consistently formatted identifier, i.e., an alpha prefix along with a fixed length number for EACH custodian, i.e., ABC0000001. This format MUST remain consistent across all production numbers for each custodian. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted.

The following describes the specifications for producing image-based productions to the SEC and the load files required for *Concordance®* and *Concordance Image®*.

1. **Images**
   a. Images should be single-page, Group IV TIFF files, scanned at 300 dpi.
   b. File names cannot contain embedded spaces.
   c. Bates numbers should be endorsed on the lower right corner of all images.
   d. The number of TIFF files per folder should not exceed 500 files.
   e. Rendering to images PowerPoint, AUTOCAD/ photographs and Excel files:
      1) PowerPoint: All pages of the file should be scanned in full slide image format, with any speaker notes following the appropriate slide image.
      2) AUTOCAD/ photographs: If possible, files should be scanned to single page JPEG (.JPG) file format.
      3) Excel: TIFF images of spreadsheets are not useful for review purposes; because the imaging process can often generate thousands of pages per file, a placeholder image, named by the *IMAGEID* of the file, may be used instead.

2. ***Concordance Image®* Cross-Reference File**
The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database.

The format is as follows:
*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

| | |
|---|---|
| *ImageID*: | The unique designation that *Concordance®* and *Concordance Image®* use to identify an image. *Note: This imageID key must be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. We recommend that the format be a 7 digit number to allow for the possible increase in the size of a production.* |
| *VolumeLabel*: | Optional |
| *ImageFilePath*: | The full path to the image file. |
| *DocumentBreak*: | The letter "Y" denotes the first page of a document.  If this field is blank, then the page is not the first page of a document. |
| *FolderBreak*: | Leave empty |
| *BoxBreak*: | Leave empty |
| *PageCount*: | Optional |

Sample

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000003.TIF,Y,,,
IMG0000005,,E:\001\IMG0000003.TIF,,,,
IMG0000006,,E:\001\IMG0000003.TIF,,,,
```

3. *Concordance®* **Data File**
   The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

   a. The first line of the .DAT file must be a header row identifying the field names.
   b. The .DAT file must use the following *Concordance®* default delimiters:

   | Comma | ¶ | ASCII character (020) |
   |---|---|---|
   | Quote | þ | ASCII character (254) |
   | Newline | ® | ASCII character (174) |

   c. Date fields should be provided in the format:  mm/dd/yyyy
   d. All attachments should sequentially follow the parent document/email.
   e. All metadata associated with email, audio files, and native electronic document collections must be produced (see pages 4-5).

   f. The .DAT file for scanned paper collections must contain, at a minimum, the following fields:
      1) FIRSTBATES:   Beginning Bates number
      2) LASTBATES:   Ending Bates number
      3) IMAGEID:   Image Key field
      4) CUSTODIAN:   Individual from whom the document originated
      5) OCRTEXT:   Optical Character Recognition  (file path, or text)

   Sample of .DAT file (when text files are provided separately)

```
þFIRSTBATESþ¶þLASTBATESþ¶þIMAGEIDþ¶þCUSTODIANþ¶þOCRTEXTþ
þPC00000001þ¶þPC00000002þ¶þIMG0000001þ¶þSmith, Johnþ¶þE:\TEXT\PC00000001.TXTþ
þPC00000003þ¶þPC00000003þ¶þIMG0000003þ¶þSmith, Johnþ¶þE:\TEXT\PC00000003.TXTþ
þPC00000004þ¶þPC00000005þ¶þIMG0000004þ¶þSmith, Johnþ¶þE:\TEXT\PC00000004.TXTþ
```

   Sample of .DAT file (with text)

```
þFIRSTBATESþ¶þLASTBATESþ¶þIMAGEIDþ¶þCUSTODIANþ¶þOCRTEXTþ
þPC00000001þ¶þPC00000002þ¶þIMG0000001þ¶þSmith, Johnþ¶þ*** IMG0000001 ***®®The world of
investing is fascinating and complex, and it can be very fruitful. But unlike the banking
world, where deposits are guaranteed by the federal government, stocks, bonds and other
securities can lose value. There are no guarantees. That's why investing is not a spectator
sport. By far the best way for investors to protect the money they put into the securities
markets is to do research and ask questions.®® *** IMG0000002 ***®®The laws and rules that
govern the securities industry in the United States derive from a simple and
straightforward concept: all investors, whether large institutions or private individuals,
should have access to certain basic facts about an investment prior to buying it, and so
long as they hold it. To achieve this, the SEC requires public companies to disclose
meaningful financial and other information to the public. This provides a common pool of
knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a
particular security. Only through the steady flow of timely, comprehensive, and accurate
information can people make sound investment decisions.þ
þPC00000003þ¶þPC00000003þ¶þIMG0000003þ¶þSmith, Johnþ¶þ***IMG0000003 ***®®The result of this
information flow is a far more active, efficient, and transparent capital market that
facilitates the capital formation so important to our nation's economy.þ
þPC00000004þ¶þPC00000005þ¶þIMG0000004þ¶þSmith, Johnþ¶þ *** IMG0000004 ***®®To insure that
this objective is always being met, the SEC continually works with all major market
participants, including especially the investors in our securities markets, to listen to
their concerns and to learn from their experience.®® *** IMG0000005 ***®®The SEC oversees
the key participants in the securities world, including securities exchanges, securities
brokers and dealers, investment advisors, and mutual funds. Here the SEC is concerned
primarily with promoting the disclosure of important market-related information,
maintaining fair dealing, and protecting against fraud.þ
```

The text and metadata of Email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: mailbox where the email resided<br>Native: Individual from whom the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple Entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple Entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple Entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple Entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT | 07:05 PM | Email: Time the email was sent<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |

| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
|---|---|---|
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID<br>Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| TEXT | From: Smith, John<br>Sent: Tuesday, October 12, 2010 07:05 PM<br>To: Coffman, Janice<br>Subject: Board Meeting Minutes<br><br>Janice;<br>Attached is a copy of the September Board Meeting Minutes and the draft agenda for October. Please let me know if you have any questions.<br><br>John Smith<br>Assistant Director<br>Information Technology<br>Phone: (202) 555-1111<br>Fax: (202) 555-1112<br>Email: jsmith@xyz.com | Extracted text of the native file document/email |

4.   **Text**
Searchable text of the entire document must be provided for every record, at the document level.

    a.   Extracted text must be provided for all documents that originated in electronic format. The text files should include page breaks that correspond to the 'pagination' of the image files. Note: Any document in which text cannot be extracted must be OCR'd, particularly in the case of PDFs without embedded text.

    b.   OCR text must be provided for all documents that originated in hard copy format. A page marker should be placed at the beginning, or end, of each page of text, e.g. *** IMG0000001 *** whenever possible. The data surrounded by asterisks is the *Concordance®* ImageID .

       Sample page markers with OCR text:

> *** IMG0000001 ***
>
> The world of investing is fascinating and complex, and it can be very fruitful. But unlike the banking world, where deposits are guaranteed by the federal government, stocks, bonds and other securities can lose value. There are no guarantees. That's why investing is not a spectator sport. By far the best way for investors to protect the money they put into the securities markets is to do research and ask questions.
>
> *** IMG0000002 ***
>
> The laws and rules that govern the securities industry in the United States derive from a simple and straightforward concept: all investors, whether large institutions or private individuals, should have access to certain basic facts about an investment prior to buying it, and so long as they hold it. To achieve this, the SEC requires public companies to disclose meaningful financial and other information to the public. This provides a common pool of knowledge for all investors to use to judge for themselves whether to buy, sell, or hold a particular security. Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions.

    c.   For redacted documents, provide the full text for the redacted version.

    d.   Delivery
       The text can be delivered two ways:
       1)   As multi-page ASCII text files with the files named the same as the ImageID field. Text files can be placed in a separate folder or included with the .TIF files. The number of files per folder should be limited to 500 files.
       2)   Included in the .DAT file.

5.   **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
    a.   Native file documents must be named per the FIRSTBATES number.
    b.   The full path of the native file must be provided in the .DAT file for the LINK field.
    c.   The number of native files per folder should not exceed 500 files.

## II.   Native File Production
The SEC will also accept native file productions. The files must be produced as they are maintained in the normal course of business. Data must be organized by custodian named file folders.

## III.   Audio Files
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file.

The metadata must include, at a minimum, the following fields:

| | | |
|---|---|---|
| 1) | Caller Name: | Caller's name or account/identification number |
| 2) | Originating Number: | Caller's phone number |
| 3) | Called Party Name: | Called party's name |
| 4) | Terminating Number: | Called party's phone number |

|   |          |                       |
|---|----------|-----------------------|
| 5) | Date:     | Date of call          |
| 6) | Time:     | Time of call          |
| 7) | Filename: | Filename of audio file |

## IV.  Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## V.  Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VI.  Electronic Phone Records

When producing electronic phone records, provide the files in one of the following formats:

1.  MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeros as text).

2.  Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

The metadata must include, at a minimum, the following fields in separate columns:

|    |                      |                                   |
|----|----------------------|-----------------------------------|
| 1) | Account Number:       | Caller's telephone account number |
| 2) | Originating Number:   | Caller's phone number             |
| 3) | Terminating Number:   | Called party's phone number       |
| 4) | Connection Date:      | Date of call                      |
| 5) | Connection Time:      | Start time of call                |
| 6) | End Time:             | End time of call                  |
| 7) | Elapsed Time:         | Duration in minutes of the call   |

Each field of data must be loaded into a separate column. For example, Connection Date and Connection Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed here must also be loaded into separate columns.

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena

**A. False Statements and Documents**

Section 1001 of Title 18 of the United States Code provides as follows:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony whenever during your testimony you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned to afford you the opportunity to arrange to do so.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever . . . having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years or both . . . .

5. *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

SEC 1662 (03-10)

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you or subject you to fine, penalty or forfeiture.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.*  If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self addressed envelope.

## E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.*  The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.*  One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment

Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To coordinate law enforcement activities between the SEC and other federal, state, local or foreign law enforcement agencies, securities self regulatory organizations, and foreign securities authorities.

2. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

3. Where there is an indication of a violation or potential violation of law, whether civil, criminal or regulatory in nature, and whether arising by general statute or particular program statute, or by regulation, rule or order issued pursuant thereto, the relevant records in the system of records may be referred to the appropriate agency, whether federal, state, or local, a foreign governmental authority or foreign securities authority, or a securities self-regulatory organization charged with the responsibility of investigating or prosecuting such violation or charged with enforcing or implementing the statute or rule, regulation or order issued pursuant thereto.

4. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

5. To a federal, state, local or foreign governmental authority or foreign securities authority maintaining civil, criminal or other relevant enforcement information or other pertinent information, such as current licenses, if necessary to obtain information relevant to an agency decision concerning the hiring or retention of an employee, the issuance of a security clearance, the letting of a contract, or the issuance of a license, grant or other benefit.

6. To a federal, state, local or foreign governmental authority or foreign securities authority, in response to its request, in connection with the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

3

7. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

8. When considered appropriate, records in this system may be disclosed to a bar association, the American Institute of Certified Public Accountants, a state accountancy board or other federal, state, local or foreign licensing or oversight authority, foreign securities authority, or professional association or self regulatory authority performing similar functions, for possible disciplinary or other action.

9. In connection with investigations or disciplinary proceedings by a state securities regulatory authority, a foreign securities authority, or by a self regulatory organization involving one or more of its members.

10. As a data source for management information for production of summary descriptive statistics and analytical studies in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies, and to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act or to locate specific individuals for personnel research or other personnel management functions.

11. In connection with their regulatory and enforcement responsibilities mandated by the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), or state or foreign laws regulating securities or other related matters, records may be disclosed to national securities associations that are registered with the Commission, the Municipal Securities Rulemaking Board, the Securities Investor Protection Corporation, the federal banking authorities, including but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation, state securities regulatory or law enforcement agencies or organizations, or regulatory law enforcement agencies of a foreign government, or foreign securities authority.

12. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or the Commission's Rules of Practice, 17 CFR 201.100 - 900, or otherwise, where such trustee, receiver, master, special counsel or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice.

13. To any persons during the course of any inquiry or investigation conducted by the Commission's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

14. To any person with whom the Commission contracts to reproduce, by typing, photocopy or other means, any record within this system for use by the Commission and its staff in connection with their official duties or to any person who is utilized by the Commission to perform clerical or stenographic functions relating to the official business of the Commission.

15. Inclusion in reports published by the Commission pursuant to authority granted in the federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)).

16. To members of advisory committees that are created by the Commission or by the Congress to render advice and recommendations to the Commission or to the Congress, to be used solely in connection with their official designated functions.

17. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 735-18, and who assists in the investigation by the Commission of possible violations of federal securities laws (as defined in Section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

18. Disclosure may be made to a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

19. To respond to inquiries from Members of Congress, the press and the public which relate to specific matters that the Commission has investigated and to matters under the Commission's jurisdiction.

20. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78u(a), as amended.

21. To respond to subpoenas in any litigation or other proceeding.

22. To a trustee in bankruptcy.

23. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners:* The SEC always welcomes comments on how it can better assist small businesses. If you have comments about the SEC's enforcement of the securities laws, please contact the Office of Chief Counsel in the SEC's Division of Enforcement at 202-551-4933 or the SEC's Small Business Ombudsman at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.