UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

)
SECURITIES AND EXCHANGE COMMISSION, )
)
          Plaintiff, )
)
v. )   Case No. 14-cv-14692-LTS
)
HOWARD B. PRESENT, )
)
          Defendant. )
)

ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW (DOC. NO. 317)

February 8, 2018

SOROKIN, D.J.

At the conclusion of a jury trial, but prior to the case being submitted to the jury, Defendant Howard Present moved for judgment as a matter of law in his favor on Counts I, II, and IV (each alleging violations of the Investment Advisers Act of 1940 or rules thereunder), to the extent that those claims are based on Present's alleged recklessness or negligence. Doc. No. 317. The Court took the motion under advisement and submitted the case to the jury, which returned a verdict for Plaintiff, the Securities and Exchange Commission ("SEC"), and found Present to have violated these counts with at least recklessness.[1]

Each of the counts at issue allege that Present misrepresented the history of the AlphaSector strategy for the period from April 2001 to September 2008 (F-Squared's launch of the index) and/or overstated AlphaSector's historical performance during that period. Present contends that the SEC was required to offer expert evidence to establish the standard of care

---

[1] While the Court assesses Present's motion with respect to the jury's finding of recklessness, the Court's analysis applies equally to negligence.

1

applicable to his conduct, which was otherwise beyond the jury's competence to resolve. The Court disagrees.

A court may grant judgment as a matter of law after conclusion of a jury trial when the evidence "points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 554 F.3d 164, 170 (1st Cir. 2009) (citations omitted). Having examined the record and the evidence at trial, the Court concludes that the jury could have reasonably determined—without resort to expert testimony on the standard of care—that Present acted recklessly.

The cases relied upon by Present at most advise that certain malpractice or other complex claims necessitate expert evidence, but that "there is no categorical rule requiring expert testimony in a securities case." SEC v. Ginder, 762 F.3d 569, 575 (2d Cir. 2014). Here, the jury "was not asked to make a determination" as to Present's representations about the index "that required any experience or knowledge beyond that of an average lay person." SEC v. Goldsworthy, 2008 WL 8901272 at *12 (D. Mass. June 11, 2008). Rather, the SEC's claims required the jury to consider whether Present's statements comported with his duty to use reasonable care to avoid misleading other persons based on what he knew, or should have investigated, about AlphaSector's history and performance.

Among other reasons supporting denial of Present's motion, the jury reasonably could have concluded that Present acted recklessly in advertising allegedly erroneous returns for the index. At trial, the SEC presented expert testimony about the inflationary effect on AlphaSector's returns of a one-week-too-early implementation of the index's buy and sell signals. Juan Vargas testified that he discovered and notified Present of this alleged error in the

2

advertised performance calculation.  The SEC contended that Present disregarded Vargas's warning and promoted the index using inflated historical returns.  Under the circumstances, expert testimony was not necessary in order for the jury to have a reasonable basis for finding that Present's use of inflated returns was inconsistent with due care.

The jury also could reasonably understand what Present should have confirmed before telling investors that the AlphaSector strategy had been used historically.  At trial, the SEC offered numerous statements by Present about how the strategy had performed for actual clients before September 2008, when in fact no real assets had followed the strategy during that time.  Present made these representations to clients and potential clients over conference calls,[2] in marketing materials,[3] and in media appearances.[4]  Other statements suggested that Present or F-Squared had been involved with real pre-2008 investment decisions pursuant to the strategy.[5]  At the same time, the jury heard evidence that Present relied solely on Jay Morton's sparse assurances as to his pre-2008 use of a sector rotation strategy with clients and did not obtain any documentary record of such use (other than a one-sentence email).  Considering Present's statements in light of his inquiry into Morton's purported strategy, the jury could have reasonably concluded that Present was reckless in obfuscating or misstating AlphaSector's track record.  Such a finding is definitively within the competence of a jury.

Further, the jury heard non-opinion testimony from participants in the investment industry as to prior due diligence that they had undertaken with respect to investments or strategies.  Moreover, the evidence included admissions from Present as to his understanding of

---

[2] See, e.g., Trial Ex. 49A at 9:8-10:24 (statement by Present on 2010 conference call for Virtus's clients that, "starting in 2001, there has been live client assets tracking the decision making of this index[.]") (emphasis added).
[3] See, e.g., Trial Ex. 471 (quoted in news article: "in 2007, we got out of financials completely.").
[4] See, e.g., Trial Ex. 572 (television interview statement: "[w]e've been running this program now for ten years.").
[5] See, e.g., Trial Ex. 49A at 15:19-25 ("[I]n July of 2007, we sold out of financials.") and 25:16-26:3 ("[W]e were able to save our clients 280 percentage points of value" by avoiding market declines "over the last nine years") (emphasis added).

3

due diligence, in the form of a book that he authored on the very topic.[6] Present argues that the SEC's lay witnesses "had little or no experience with financial indexes, and attempted to apply technical standards to F-Squared where they may or may not properly apply." Doc. No. 318 at 4. However, whether the measures that Present took to confirm the truthfulness of his statements reflected due care does not hinge on such technical distinctions. Rather, the jury reasonably could have consulted these witness' testimony generally in assessing Present's exercise of care.

Before rendering its verdict, the jury heard evidence of plain English utterances and straightforward omissions that were themselves sufficient to support a reasonable finding of recklessness. Accordingly, the Court DENIES Present's Motion for Judgment as a Matter of Law (Doc. No. 317) and ALLOWS judgment on the verdict.

SO ORDERED.

　/s/ Leo T. Sorokin　　　
Leo T. Sorokin
United States District Judge

---

[6] Trial Ex. 101, *The New Gatekeepers*, at 54 (advising review of a composite or audited track record).